STATE of Wisconsin, Plaintiff-Respondent,

v.

Andre Tony WALLS, Defendant-Appellant.†

Court of Appeals

*No. 93–2984–CR–FT. Submitted on briefs August 2, 1994.—Decided December 6, 1994.*

(Also reported in 526 N.W.2d 765.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Gerald P. Boyle* and *Wendy A. Patrickus* of *Gerald P. Boyle, S.C.*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Irene P. Gall*, assistant district attorney, and briefs of *James E. Doyle*, attorney general, with *Marguerite M. Moeller*, assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J. Andre Tony Walls appeals from a judgment of conviction for carrying a concealed weapon, party to a crime, contrary to §§ 941.23, and 939.05, Stats. Walls presents only one issue for our review—whether the evidence was sufficient to convict him of going armed with a concealed and dangerous weapon where: (1) the weapon was a semi-automatic handgun located inside an automobile and within Walls' reach; (2) he was aware of the presence of the weapon; and (3) the weapon was concealed, or hidden from ordinary view, meaning it was indiscernible from the ordinary observation of a person located outside and within the immediate vicinity of the vehicle. Because we conclude a weapon located in the above manner is "concealed" within the meaning of § 941.23, we reject Walls' argument and affirm.[1]

The parties stipulated to most of the dispositive facts. On October 17, 1988, at about 2:42 a.m., Walls was a passenger in an automobile that was stopped by

---

[1] This case was originally submitted to the court on the expedited appeals calendar, *see* Rule 809.17, Stats., and assigned as an appeal to be determined by one judge as provided by § 752.31(2)(f), Stats. Pursuant to Chief Judge Eich's order of May 25, 1994, this case is decided by a three-judge panel.

two City of Milwaukee police officers. The police officers were responding to a report of a robbery and, noting that the car in which Walls was riding had been involved in a similar incident eight days earlier, pulled the vehicle over. Both Walls, who had been sitting on the right front passenger seat, and the driver exited the vehicle. The officers approached the vehicle with their guns drawn, at which time the driver fled on foot. Walls remained standing outside the automobile with its door open. Upon inspecting the vehicle, the officers spotted an Intratec 9-mm semi-automatic handgun lying on the front seat. The handgun was approximately thirteen inches long from the tip of the barrel to the handgrip, and had a blackened, gun-metal finish. The automobile front seat was red in color. After they found the handgun, the police arrested Walls for carrying a concealed weapon. The parties stipulated to most of the facts and the court, therefore, concluded it would reach a verdict based solely on the question of whether the handgun was "concealed" within the meaning of § 941.23, STATS.

After both reviewing briefs submitted by the parties and upon hearing arguments on the issue, the trial court concluded that the handgun was concealed within the meaning of the statute. The court determined that regardless of whether the police could see the black handgun lying on the red front seat upon inspecting the vehicle, the handgun was concealed to "ordinary observation" as the automobile traveled down the street prior to being stopped. Thus, the trial court found Walls guilty because the handgun was concealed and violative of § 941.23, STATS.

■

The application of conceded facts to a statute is a question of law that we review *de novo. State v. Jeffer-*

*son,* 163 Wis. 2d 332, 338, 471 N.W.2d 274, 277 (Ct. App. 1991). After reviewing the Wisconsin cases interpreting the offense of carrying a concealed weapon, we conclude that the handgun was concealed within the meaning of § 941.23, STATS.[2]

Section 941.23, STATS., provides:

> **Carrying concealed weapon.** Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor.

Further, "[t]he elements of the crime of carrying a concealed weapon are: (1) the defendant had a dangerous weapon on his person or within his reach; (2) the defendant was aware of the presence of the weapon; and (3) the weapon was concealed, or hidden from ordinary view." *State v. Fry,* 131 Wis. 2d 153, 182, 388 N.W.2d 565, 578, *cert. denied,* 479 U.S. 989 (1986). The only element at issue in this case is whether the gun was "concealed, or hidden from ordinary view." *See id.*

In *Mularkey v. State,* 201 Wis. 429, 230 N.W. 76 (1930), a driver of an automobile was convicted of "going armed" with a "concealed and dangerous weapon" when, during an "altercation," he "turned to

---

[2] We are mindful "that there is a long tradition of widespread lawful gun ownership by private individuals in this country." *Staples v. United States,* 114 S. Ct. 1793, 1799 (1994). Thus, our conclusion in this case in no way limits the *lawful* placement, possession, or transportation of, unloaded (or unstrung) and encased, firearms, bows, or crossbows in vehicles as permitted by § 167.31(2)(b), STATS., which provides in part:

> (b) Except as provided in sub. (4), no person may place, possess or transport a firearm, bow or crossbow in or on a vehicle, unless the firearm is *unloaded and encased* or unless the bow or crossbow is unstrung or is enclosed in a carrying case.

(Emphasis added.)

his automobile and took a 32-Colt automatic revolver from a holster which was on a small shelf behind and about five inches below the back of the seat." *Id.* at 430, 230 N.W. at 76. The supreme court noted that "[t]he revolver had not been visible from the front of the automobile, and it had not been observed by the witnesses who were present until [the] defendant took it out of the automobile." *Id.* In upholding the conviction, the court declared: "If the weapon is hidden from ordinary observation it is concealed. Absolute invisibility to other persons is not indispensable to concealment. The test is, was it carried so as not to be discernible by ordinary observation." *Id.* at 432, 230 N.W. at 77.

In the present case, Walls argues that the facts are distinguishable from those in *Mularkey*. He states in his appellate brief that the officers' reports indicate that " 'upon checking the auto the gun was lying on the seat' clearly in plain view." Thus, he contends, unlike *Mularkey*, the handgun was observable to anyone looking into the automobile and therefore cannot be considered concealed. We are not persuaded.

■

To read the statute in such a manner would defeat the purpose for which we conclude the statute was created. The carrying of a concealed or hidden weapon has been uniformly considered contrary to sound public policy. *See* Annotation, *Offense of Carrying Concealed Weapon as Affected by Manner of Carrying or Place of Concealment*, 43 A.L.R.2d 492, 495-98 (1955), and 43 A.L.R.2d 492 at 107 (Supp. 1992). The rationale for such statutes is well-chronicled:

> At common law or by very early statute in England, people were prohibited from going armed that they might not terrorize the King's subjects. That was never the law in this country but from an

early date, with the invention of small arms, statutes were enacted condemning the practice of carrying a deadly weapon concealed on or about the person. The reason for these statutes, it has been said, is "because persons becoming suddenly angered and having such a weapon in their pocket, would be likely to use it, which in their sober moments they would not have done, and which could not have been done had not the weapon been upon their person."

*Williams v. Commonwealth,* 261 S.W.2d 807, 807-08 (Ky. 1953) (citations omitted). A statute created to prevent the carrying of a concealed weapon on the body of a person is naturally extended to the area inside an automobile in which a person may reach a concealed or hidden weapon. *See Fry,* 131 Wis. 2d at 182, 388 N.W.2d at 577 (concluding evidence was sufficient to convict defendant of carrying concealed weapon where gun was found in automobile glove compartment). A weapon easily accessible to an occupant in an automobile, and indiscernible from ordinary observation to a person outside the vehicle, *see Mularkey,* 201 Wis. at 432, 230 N.W. at 77, is as dangerous to the general public or an unsuspecting police officer, as a weapon carried inside a person's front coat pocket. *See Williams,* 261 S.W.2d at 808. We note the particular vulnerability of police officers approaching the unilluminated passenger compartment of a vehicle at night.

 Because we determine that the statute evinces a strong rationale to prevent the carrying of concealed weapons in automobiles, as well as on a person, we conclude that a person is guilty of carrying a concealed weapon in an automobile where: (1) the weapon is

located inside a vehicle and is within the defendant's reach; (2) the defendant is aware of the presence of the weapon; and (3) the weapon is concealed, or hidden from ordinary view—meaning it is indiscernible from the ordinary observation of a person located outside and within the immediate vicinity of the vehicle. *See Fry,* 131 Wis. 2d at 182, 388 N.W.2d at 578. *But see supra* note 2 (discussing lawful placement, transportation, or possession of weapons in vehicles as permitted by § 167.31(2)(b), STATS.). Where the evidence is conflicting as to whether the weapon was indiscernible from the ordinary observation of a person located outside and within the immediate vicinity of the vehicle, that question remains within the ambit of the jury's fact-finding duty.[3] *See Mularkey,* 201 Wis. at 432, 230 N.W. at 77.

Applying this test to the conceded facts in the present case, we conclude that the handgun was indiscernible to the ordinary observation of a person

---

[3] We note the following language from *Smith v. State,* 11 So. 71 (Ala. 1892), the case from which *Mularkey*'s "discernible from ordinary observation" test was derived:

What is ordinary observation in such cases cannot well be defined so as to meet all the varying conditions under which weapons may be carried . . . but it may be said generally that the meaning is that the weapon must be open to the ordinary observation of persons who may come in contact in the usual and ordinary associations of life with one who carries a weapon. . . . If parties approaching a [person], carrying a weapon[,] . . . or passing [the person] on the streets or highways, or thrown with [the person] in ordinary social contact, can see the weapon without inspection or examination for that purpose, but from ordinary observation, then such weapon is not concealed . . . within the meaning of the statute. Whether or not it is so concealed is a question for the jury under all the facts and circumstances of each case.

*Id.* at 72.

outside and within the immediate vicinity of the vehicle. While the police officers did observe the gun lying on the front seat after they handcuffed Walls, this was upon the "inspection" and "examination" of the automobile pursuant to the stop and thus, cannot be considered "ordinary observation." *See Smith v. State,* 11 So. 71, 72 (Ala. 1892). As the trial court determined, however, immediately prior to this point, with the automobile traveling down a city street at night, the handgun was indiscernible from the ordinary observation of a person located outside and within the immediate vicinity of the vehicle. Thus, a person "approaching" the vehicle, or "passing" it "on the streets or highways" could not see the handgun. *See id.* Therefore, we conclude there is sufficient evidence to convict Walls of carrying a concealed weapon. *See State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990) (judgment of conviction should not be reversed if any evidence supports upholding the jury's verdict). Accordingly, we affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.