941 P.2d 908

**STATE of Arizona, Appellee,**

v.

**Delon Joseph ADAMS, Appellant.**

No. 1 CA–CR 95–0809.

Court of Appeals of Arizona, Division 1, Department A.

May 29, 1997.

**236**

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and R. Wayne Ford, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

FIDEL, Judge.

How hidden must a weapon be to be "concealed" for the purposes of Arizona Revised Statutes Annotated ("A.R.S.") § 13–3102(A)(2) (Supp.1996)? We answer that and other questions in this appeal.

## HISTORY

Police officer Randy S. Cooper arrested Appellant Delon Joseph Adams and two companions suspected of passing a forged check at a Phoenix bank. Searching their car, Officer Cooper found a Ruger 9 mm semi-automatic weapon wedged between the passenger seat and door. Because Appellant had been seated in the passenger seat, the weapon was within his immediate control. Officer Cooper also found marijuana in Appellant's pocket.

The State charged and tried Appellant on three counts of forgery, in violation of A.R.S. § 13–2002 (1989); one count of fraudulent schemes and artifices, in violation of A.R.S. § 13–2310 (Supp.1996); one count of possession of marijuana, in violation of A.R.S. § 13–3405 (Supp.1996); and one count of misconduct involving weapons, in violation of A.R.S. § 13–3102(A)(2). On the forgery and fraudulent schemes and artifices counts, the State presented evidence that, within one hour on the day in question, Appellant presented forged checks to drive-in tellers at three branches of a bank. At each branch, he showed identification and tendered checks that his accomplice, Dawn Wicketts, had made payable to him. The account holder had not authorized Wicketts to use these checks. At the first two branches, Appellant succeeded in cashing checks for $250 and $300; at the third branch, the teller became suspicious and Appellant and his companions fled, leaving his identification behind.

Appellant told Officer Cooper that Wicketts asked him to cash the checks for her because she lacked identification. He claimed not to know the checks were forged, but admitted they were signed in the account holder's name, not Wicketts's. Appellant denied receiving any benefit from the transactions, though Officer Cooper found $250 in Appellant's wallet. Appellant admitted owning the Ruger semi-automatic weapon, but denied concealing it, asserting rather that it had fallen from his lap into the space where Officer Cooper found it.

A jury acquitted Appellant of two forgery counts concerning checks cashed at the first two branches. The jury convicted Appellant of forgery at the third branch and of fraudulent schemes and artifices, possession of marijuana, and misconduct involving weapons. The trial court sentenced Appellant to varying concurrent prison terms for forgery, fraudulent schemes and artifices, and possession of marijuana, and to a concurrent six-month jail term for misconduct involving weapons. The court also ordered Appellant to pay restitution of $550 for fraudulent schemes and artifices and a $750 fine for possession of marijuana.

We address three issues on appeal:

(1) Was Appellant's weapon "concealed"?

(2) Did the evidence support conviction for fraudulent schemes and artifices?

(3) Did the trial court err in ordering Appellant to pay restitution of $550 when Appellant was acquitted of committing forgery at the branches where $550 was obtained?

## CONCEALED WEAPON

Appellant was convicted of violating A.R.S. § 13–3102(A)(2), which provides in part:

A. A person commits misconduct involving weapons by knowingly:

. . . .

2. Carrying a deadly weapon without a permit pursuant to § 13–3112 concealed within immediate control of any person in or on a means of transportation.

The statute does not define "concealed," nor have our courts done so to date.

■ Officer Cooper found Appellant's Ruger semi-automatic weapon lodged between the passenger seat and door. Officer Cooper testified that he did not see the firearm until he opened the car door; the only way he could have seen the weapon with the door closed was to look "straight down" after putting his entire head through the window. Taking this testimony as an acknowledgement that the weapon, though obscure, was visible from a certain angle, Appellant argues that the trial court should have directed a verdict that the weapon was not concealed. We disagree.

We begin with the standard definitions. According to *Webster's Third New International Dictionary* 469 (1966), "conceal" means "to prevent disclosure or recognition of" or "to place out of sight." According to *State v. Pudman*, "The common definition of the word 'conceal' is 'to hide or withdraw from observation; to cover or keep from sight.'" 65 Ariz. 197, 211, 177 P.2d 376, 386 (1946) (quoting *People v. McGinnis*, 55 Cal. App.2d 931, 132 P.2d 30, 32 (1942)). The problem with such definitions is that they just restate the question: Was this weapon concealed, hidden from observation, or placed out of sight when it could have been seen from a certain angle by one who undertook to see it?

To answer this question, it helps to consider the purpose of A.R.S. § 13–3102(A). We have held that the statute is intended to "'protect[ ] the public by preventing an individual from having on hand a deadly weapon of which the public is unaware, and which an individual may use in a sudden heat of passion.'" *State v. Moerman*, 182 Ariz. 255, 261, 895 P.2d 1018, 1024 (App.1994) (quoting *Dano v. Collins*, 166 Ariz. 322, 324, 802 P.2d 1021, 1023 (App.1990)). For that purpose, this weapon was concealed, as there was nothing about its location that put others on notice of its presence.

Other courts have held that a concealed weapon need not be completely hidden or invisible. *See, e.g., Ensor v. State*, 403 So.2d 349, 354 (Fla.1981); *State v. Gwinn*, 390 A.2d 479, 482 (Me.1978); *State v. Walls*, 190 Wis.2d 65, 526 N.W.2d 765, 767–68 (App. 1994). Most courts hold that a weapon is concealed if it is hidden from the "ordinary observation" or the "ordinary sight" of another person. *United States v. Flum*, 518 F.2d 39, 45 (8th Cir.1975); *McKee v. State*, 488 P.2d 1039, 1042 (Alaska 1971); *Ensor*, 403 So.2d at 353–54.

In *Walls*, the Wisconsin Court of Appeals held that a weapon in the defendant's car was concealed because: (1) it was within the defendant's reach; (2) the defendant knew it was there; and (3) the weapon was "indiscernible from the ordinary observation of a person located outside and within the immediate vicinity of the vehicle." 526 N.W.2d at 767. The court added:

What is ordinary observation in such cases cannot well be defined so as to meet all the varying conditions under which weapons may be carried . . . but it may be said generally that the meaning is that the weapon must be open to the ordinary observation of persons who may come in contact in the usual and ordinary associations of life with one who carries a weapon. . . . If parties approaching a [person], carrying a weapon[,] . . . or passing [the person] on the streets or highways, or thrown with [the person] in ordinary social contact, can see the weapon without inspection or examination for that purpose, but from ordinary observation, then such weapon is not concealed . . . within the meaning of the statute.

*Id.* at 767 n. 3 (quoting *Smith v. State*, 96 Ala. 66, 11 So. 71 (1892)); *see also State v. Bowman*, 79 Ohio App.3d 407, 607 N.E.2d 516, 520 (1992); *State v. Coker*, 15 Ohio App.3d 97, 472 N.E.2d 747, 749 (1984).

In *Ensor,* the Florida Supreme Court considered a partially hidden handgun found by police on a vehicle floorboard at a roadside stop. 403 So.2d 349. The court rejected the assertion that the weapon was subject to "ordinary observation" by one who scanned the floorboard:

> Ordinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible.... *[A] weapon's possible visibility from a point outside the vehicle may not, as a matter of law, preclude the weapon from being a concealed* weapon under [the statute].... In all instances, common sense must prevail. The critical question turns on whether an individual, standing near a person with a firearm ... may by ordinary observation know the questioned object to be a firearm. The ultimate decision must rest upon the trier of fact under the circumstances of each case.

*Id.* at 354–55 (emphasis added); *accord McGraw v. State,* 404 So.2d 817, 819 (Fla. App.1981); *cf. State v. Cavin,* 555 S.W.2d 653, 654 (Mo.App.1977) ("[A] weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions."); *State v. Jordan,* 793 S.W.2d 905, 906 (Mo.App.1990).

Other courts have focused on the nature and degree of observation, excluding from the scope of "ordinary observation" searches that are "unusually careful, thorough or detailed," such as those of a trained, alert investigating officer. *State v. Pettit,* 20 Ohio App.2d 170, 252 N.E.2d 325, 328 (1969); *State v. Gregory,* 90 Ohio App.3d 124, 628 N.E.2d 86, 90 (1993).

We are satisfied after surveying such case law that the standard of "ordinary observation," when applied with common sense, will serve to determine whether a weapon is concealed. Applying that standard to this case, we find sufficient evidence to support conviction.

## FRAUDULENT SCHEMES AND ARTIFICES

■ To convict Appellant of fraudulent schemes and artifices under A.R.S. § 13–2310, the jury was required to find that he received a benefit from his fraudulent acts. Subsection 13–2310(A) provides:

> Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.

Appellant emphasizes that, of three forgery charges, he was convicted only of the charge relating to his unsuccessful attempt to cash a check at the third branch. Because he did not receive any benefit from this last attempt, he argues that the jury could not have found the element of benefit necessary to support a fraudulent schemes and artifices conviction. We disagree.

■ Trial testimony showed that Appellant and his accomplices obtained benefits totalling $550 at the first two branches after Appellant endorsed and presented identification to cash forged checks. That Appellant was acquitted of forgery counts relating to these incidents did not preclude the jury from returning a fraudulent schemes and artifices conviction on the same evidence. Verdicts on different counts of an indictment need not be consistent. *State v. Zakhar,* 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969). Because the evidence sufficed to establish Appellant's receipt of a benefit, it sufficed to support his conviction on this count.

## RESTITUTION

■ Appellant also asserts that the trial court abused its discretion in ordering restitution. Restitution is proper only for charges that a defendant is convicted of, admits to, or agrees to pay. *State v. Garcia,* 176 Ariz. 231, 236, 860 P.2d 498, 503 (App. 1993). Here, the trial court ordered Appellant to pay the bank $550 in restitution. Appellant claims that this order was an error because he was acquitted of the charges relating to the bank's monetary loss. Here again, we disagree.

If we had only the three forgery counts before us, Appellant's argument might have more weight. *See id.* As we have stated,

however, Appellant was convicted of fraudulent schemes and artifices, of which a necessary element is a benefit received. Further, the evidence established that Appellant had accomplices, and that the bank suffered a $550 economic loss from their scheme. The trial court's restitution order therefore was reasonably related to both Appellant's conviction and the bank's loss. *See State v. Young*, 173 Ariz. 287, 288, 842 P.2d 1300, 1301 (App.1992).

For these reasons, Appellant's convictions and sentences are affirmed.

NOYES, P.J., and RYAN, J., concur.