IN RE the RETURN OF PROPERTY IN: STATE of Wisconsin v. Carlos PEREZ:

STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Carlos PEREZ, Defendant-Respondent.

Supreme Court

*No. 99–3108–CR. Oral argument December 1, 2000.—Decided June 29, 2001.*

2001 WI 79

(Also reported in 628 N.W.2d 820.)

584

For the plaintiff-appellant-petitioner the cause was argued by *Jeffrey J. Kassel*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent there was a brief by *R. Douglas Stansbury* and *Levy & Levy, S.C.*,

Cedarburg, and oral argument by *R. Douglas Stansbury.*

An amicus curiae brief was filed by *Grant F. Langley*, city attorney, and *Christopher J. Cherella*, assistant city attorney, Milwaukee, on behalf of the City of Milwaukee.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *State v. Perez*, 2000 WI App 115, 235 Wis. 2d 238, 612 N.W.2d 374, affirming an order of the Ozaukee County Circuit Court, Walter J. Swietlik, Judge. The issue presented is whether a person who is convicted of carrying a concealed and dangerous weapon under Wis. Stat. § 941.23 (1997–98)[1] has "committed a crime involving the use of the dangerous weapon," as that phrase is used in Wis. Stat. § 968.20(1m)(b), so that a dangerous weapon seized from the person may not be returned.

¶ 2. The circuit court and the court of appeals held that the phrase "the use of the dangerous weapon" requires more than possession of a dangerous weapon in committing a crime before Wis. Stat. § 968.20(1m)(b) bars return of the weapon. We disagree with this conclusion for the offense of carrying a concealed and dangerous weapon, in which conscious possession of a dangerous weapon is an element of the crime.

¶ 3. We hold that a person convicted of going armed with a concealed and dangerous weapon contrary to Wis. Stat. § 941.23 has "committed a crime involving the use of the dangerous weapon," and that the return of the dangerous weapon or weapons seized

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

587

from the person is prohibited by Wis. Stat. § 968.20(1m)(b). Accordingly, we reverse.

## I. FACTS

¶ 4. The facts central to this case are not in dispute. Carlos Perez, a resident of Florida, is a self-employed tile artisan who came to Wisconsin to work on the construction of a home. On November 14, 1998, in the City of Mequon, Perez drove his van into a ditch while attempting to make a U-turn. Two Mequon police officers were dispatched to the scene to assist Perez and his passenger, Alfredo Guerrero. Upon their arrival, the officers examined the vehicle for damage and observed three firearms on the floor of the van. They saw a Colt .45 caliber semi-automatic handgun, a 12 gauge semi-automatic shotgun, and a 30–06 semi-automatic rifle. The Colt .45 handgun and the 12 gauge shotgun were uncased and loaded. The rifle was cased and unloaded. The loaded handgun was on the floor next to the driver. The other guns were on the floor within the driver's reach. The officers also saw three knives, a foot-long wooden/metal club, ammunition for each of the firearms, an ammunition belt, two gun cases, a flashlight, and two hunting magazines.

¶ 5. Perez informed the officers that he had a permit to carry concealed weapons in Florida. He said he did not realize that he could not carry the weapons in Wisconsin. The officers seized the weapons and ammunition. On December 18, 1998, the State filed a criminal complaint charging Perez and Guerrero as parties to the crime of carrying a concealed and danger-

ous weapon, contrary to Wis. Stat. §§ 941.23 and 939.05.[2]

¶ 6. A plea and sentencing hearing was held before Judge Swietlik on July 30, 1999. Perez was represented by counsel, and he appeared via telephone. He entered a "no contest" plea to the charge. The State recommended a fine of $200, the payment of costs, and the forfeiture of the dangerous weapons seized from Perez's van.[3] Perez's attorney agreed to the fine and imposition of costs but informed the court that Perez intended to seek the return of the seized weapons under Wis. Stat. § 968.20. Perez and his attorney told the court that Perez was in Wisconsin on business at the time of the incident and was licensed to carry concealed weapons in his home state for the purpose of hunting. The court accepted Perez's plea and imposed a $200 fine and $130 in costs. It also instructed Perez's attorney to file a motion regarding the return of Perez's weapons.

¶ 7. On August 24, 1999, Perez filed a motion pursuant to Wis. Stat. § 968.20 seeking the return of all the items seized by the Mequon Police Department incident to his arrest. The court held a hearing on September 7, 1999. The State asserted that the return of the dangerous weapons was prohibited by § 968.20(1m)(b), which provides in part: "If the seized property is a dangerous weapon or ammunition, the

---

[2] Under Wis. Stat. § 941.23, "Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor."

Wisconsin Stat. § 939.05 is Wisconsin's "parties to crime" statute.

[3] As a Class A misdemeanor, Wis. Stat. § 941.23 carries a maximum penalty of "a fine not to exceed $10,000 or imprisonment not to exceed 9 months, or both." Wis. Stat. § 939.51(3)(a).

property shall not be returned to any person who committed a crime involving the use of the dangerous weapon or the ammunition." The State acknowledged that the firearms were not fired but asserted that they were involved in the crime of carrying a concealed and dangerous weapon "by their mere presence."

¶ 8. The circuit court granted Perez's motion, stating: "[I]f these weapons had been in any way used in the commission of an offense I would certainly not grant the motion." The circuit court noted that Perez was licensed to carry concealed weapons in Florida and that the weapons "were in no way used in the commission of a crime." The court also ordered the return of Perez's other property, including his knives and club. However, it did not allow the return of any of the ammunition found in the van.

¶ 9. On appeal, the court of appeals affirmed. In his majority opinion, Judge Richard S. Brown utilized a dictionary definition of the verb "use" to ascertain the word's common and approved usage, writing:

> Webster's defines "use" as "to put into action or service," to "apply to advantage" and "to carry out a purpose or action by means of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523–24 (1993). In terms of the statute, these meanings show that the mere fact that the firearm is with a person is not enough. The firearm had to be part of the crime in some way.
>
> Lest our holding be misunderstood, we hasten to clarify that the firearm's involvement in the crime need not be active. . . .But, if a person simply has a gun uncased in a car and the car goes into a ditch, that person has neither put the gun into action or service, availed himself or herself of it, nor carried out any purpose or action by means of the

weapon. In Perez's case, there is no evidence that Perez. . ."used" the firearms to commit a crime as that term is understood in everyday language.

*Perez*, 235 Wis. 2d at ¶¶ 6–7.

¶ 10. In a lively dissent, Judge Neal P. Nettesheim wrote: "I cannot accept the majority's conclusion that a defendant who has admitted arming himself or herself with a dangerous weapon and then concealing the weapon has not used the weapon for purposes of Wis. Stat. § 968.20(1m)(b)." *Id.* at ¶ 15 (Nettesheim, J., dissenting). Judge Nettesheim found the word "use" in the statute ambiguous and "so elastic and varied that it can carry multiple meanings in a given context." *Id.* at ¶ 16. He concluded that "the legislature intended the statute to apply to persons convicted of going armed with a concealed and dangerous weapon." *Id.* at ¶ 24.

¶ 11. This court granted the State's petition for review.

## II. STANDARD OF REVIEW

■

¶ 12. The issue in this case requires us to interpret Wis. Stat. § 968.20(1m)(b) and apply the statute to undisputed facts. It therefore presents a question of law that we review de novo, *Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians*, 2000 WI 79, ¶ 17, 236 Wis. 2d 384, 612 N.W.2d 709, benefiting from the analyses of the circuit court and court of appeals.

591

## III. ANALYSIS

¶ 13. When interpreting a statute, this court's goal is to discern the intent of the legislature, and to give it effect. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999). The general rule in statutory interpretation is that all words and phrases should be construed according to common and approved usage unless otherwise defined in the statutes. Wis. Stat. § 990.01(1); *State v. Curiel*, 227 Wis. 2d 389, 404, 597 N.W.2d 697 (1999).

¶ 14. We first examine the plain language of the statute to determine if it clearly and unambiguously sets forth the legislative intent. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). If it does, we go no further in interpreting the statute. However, if the statutory language is unclear or ambiguous, we may look to the scope, history, context, subject matter, and object of the statute to determine the legislative intent. *Teague*, 236 Wis. 2d at ¶ 17. Statutory language is ambiguous if it is capable of being understood in two or more different ways or in two or more different senses by reasonably well-informed persons. *Id.*; *Setagord*, 211 Wis. 2d at 406.

A. Statutory Language

¶ 15. Wisconsin Stat. § 968.20 governs the disposition of seized property. It provides in part:

> (1) Any person claiming the right to possession of property seized pursuant to a search warrant or seized without a search warrant may apply for its return to the circuit court for the county in which the property was seized or where

the search warrant was returned. The court shall order such notice as it deems adequate to be given the district attorney and all persons who have or may have an interest in the property and shall hold a hearing to hear all claims to its true ownership. If the right to possession is proved to the court's satisfaction, it shall order the property, *other than* contraband or *property covered under sub. (1m)* or (1r) or s. 951.165, returned if:

 (a) The property is not needed as evidence or, if needed, satisfactory arrangements can be made for its return for subsequent use as evidence; or

 (b) All proceedings in which it might be required have been completed.'

Wis. Stat. § 968.20 (emphasis added). The State contends that Perez's firearms represent property covered under subsection (1m) of the statute, which consists of two paragraphs, (a) and (b).

¶ 16. Wisconsin Stat. § 968.20(1m)(a) defines the terms "crime"[4] and "dangerous weapon."[5]

¶ 17. Wisconsin Stat. § 968.20(1m)(b) then provides:

---

[4] Wisconsin Stat. § 968.20(1m)(a)1. provides that: " 'Crime' includes an act committed by a juvenile or incompetent adult which would have been a crime if the act had been committed by a competent adult."

[5] Wisconsin Stat. § 968.20(1m)(a)2. provides that: " 'Dangerous weapon' has the meaning given in s. 939.22(10)."

Under Wis. Stat. § 939.22(10):

> "Dangerous weapon" means any firearm, whether loaded or unloaded; any device designated as a weapon and capable of producing death or great bodily harm; any electric weapon, as defined in s. 941.295(4); or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

(1m)(b) If the seized property is a dangerous weapon or ammunition, the property shall not be returned to any person who committed a crime involving the use of the dangerous weapon or the ammunition. The property may be returned to the rightful owner under this section if the owner had no prior knowledge of and gave no consent to the commission of the crime. Property which may not be returned to an owner under this subsection shall be disposed of under subs. (3) and (4).

¶ 18. There is no dispute that "going armed with a concealed and dangerous weapon" fits within the definition of "crime" and that the firearms at issue are "dangerous weapons." Perez owned these dangerous weapons and they are no longer needed in any criminal action or proceeding. Hence, Perez is entitled to the return of his dangerous weapons unless they are "contraband" or "property covered under [Wis. Stat. § 968.20](1m) or (1r) or [Wis. Stat. § ] 951.165." Wis. Stat. § 968.20(1).

¶ 19. The criminal complaint charged that Perez "did unlawfully go armed with a concealed and dangerous weapon." The language in the complaint tracked the language in Wis. Stat. § 941.23, under which he was charged. When Perez entered his plea of no contest to the charge, he conceded the three elements of the offense. He conceded that he was a person, not a police officer, who went armed with a dangerous weapon. He conceded that he was aware of the presence of the dangerous weapon. He conceded that the dangerous weapon was concealed. *State v. Dundon*, 226 Wis. 2d 654, 660–61, 594 N.W.2d 780 (1999) (citing *State v. Fry*, 131 Wis. 2d 153, 182, 388 N.W.2d 565 (1986); Wis JI—Criminal 1335; *State v. Walls*, 190 Wis. 2d 65, 71–72, 526 N.W.2d 765 (Ct. App. 1994)).

¶ 20. In *State v. Asfoor*, 75 Wis. 2d 411, 433–34, 249 N.W.2d 529 (1977), we explained that "going armed" means that "the weapon was on the defendant's person or that the weapon must have been within the defendant's reach and that the defendant was aware of the presence of the weapon." We reasoned in *Asfoor* that "[c]oncealing or hiding a weapon *precludes inadvertence*." *Id.* at 433 (emphasis added).

¶ 21. Under Wis. Stat. § 968.20(1m)(b), neither dangerous weapons nor ammunition may be returned to a person who has "committed a crime involving the use of the dangerous weapon or the ammunition." Does going armed with a dangerous weapon—one element in a § 941.23 offense—involve "the use of the dangerous weapon" in the commission of a crime? We think that it does.

¶ 22. We focus first on the words of the statute. In the phrase "a crime involving the use of the dangerous weapon," the word "use" is a noun, not a verb. We know that "the" is a "definite article." H. Ramsey Fowler and Jane E. Aaron, *The Little, Brown Handbook* 173, 768 (5th ed. 1992). Definite articles may be described as "noun markers" or "noun determiners," because they always signal that a noun follows. *Id.* In the phrase "committed a crime involving the use of the dangerous weapon," "use" is the noun immediately following the article "the."

¶ 23. The noun "use" is not defined in the statute. Under long-standing tradition, the court may examine a recognized dictionary to determine the common and ordinary meaning of a word. *State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 168, 580 N.W.2d 203 (1998). Inasmuch as the word "use" appears as a noun,

595

we think it is appropriate to examine its definition as a noun.[6]

¶ 24. The word "use" has numerous dictionary definitions when employed as a noun. One definition is "the act of using; the application or employment of something for a purpose." *The American Heritage Dictionary of the English Language* 1966 (3d ed. 1992). Another definition is "the power or ability to use something."[7] *Id.*

¶ 25. The numerous and varied definitions of the noun "use" indicate that the term may carry a meaning broader than that of "active use." There is no question that some of the approved and common definitions of the noun "use" connote active utilization, but others do not. For instance, a person who owns a firearm for "use" in self-defense may never actually operate the firearm. The person's "use" may consist of "the power or

---

[6] The circuit court and court of appeals both interpreted "use" as a verb. In their briefs to this court, both Perez and the State urged interpretations of "use" that treated the word as a verb. However, at oral argument, both parties acknowledged that "use" as it appears in Wis. Stat. § 968.20(1m)(b) is a noun.

[7] *The American Heritage Dictionary of the English Language* 1966 (3d ed. 1992), defines the noun form of "use" as:

1.a. The act of using; the application or employment of something for a purpose: *with the use of a calculator; skilled in the use of the bow and arrow.* b. The condition or fact of being used: *a chair in regular use.* 2. The manner of using; usage: *learned the proper use of power tools.* 3.a. The permission, privilege, or benefit of using something: *gave us the use of their summerhouse.* b. The power or ability to use something: *lost the use of one arm.* 4. The need or occasion to use or employ: *have no use for these old clothes.* 5. The quality of being suitable or adaptable to an end; usefulness: *tried to be of use in the kitchen.* 6. A purpose for which something is used: *a tool with several uses; a pretty bowl, but of what use is it?* 7. Gain or advantage; good: *There's no use in discussing it. What's the use?* 8. Accustomed or usual procedure or practice.

ability to use" the firearm. In that instance, the person's "use" of the firearm is latent, not active.

¶ 26. Wisconsin Stat. § 939.63 provides a perfect illustration of how the noun "use" has various meanings, some of which do not connote active utilization. The statute reads in part: "Penalties; use of a dangerous weapon. (1)(a) If a person commits a crime while possessing, using or threatening to use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased." Wis. Stat. § 939.63.

¶ 27. In the title of the statute, "use" appears as a noun: the "use of a dangerous weapon." By contrast, the text of the statute contains verb forms of "use": possessing, *using*, or threatening to *use*. The statute implies distinctions among the verb forms "possessing," "using" or "threatening to use," but all these verb forms fall under the heading "use of a dangerous weapon."

¶ 28. The exact same principle is shown in Wis. Stat. § 941.20, entitled "Endangering Safety by [the] use of dangerous weapon." This section reads in part:

(1) Whoever does any of the following is guilty of a Class A misdemeanor:

(a) Endangers another's safety by the negligent operation or handling of a dangerous weapon; or

(b) Operates or *goes armed with* a firearm while he or she is under the influence of an intoxicant; or

(c) Intentionally points a firearm at or toward another.

Wis. Stat. § 941.20 (emphasis added).

¶ 29. Operating, handling, and intentionally pointing imply active utilization, but the phrase "goes armed with" is the same phrase that appears in the

597

carrying a concealed and dangerous weapon statute, and the latter statute requires nothing more than conscious possession. All these words and phrases fall under the heading "Endangering safety by use of a dangerous weapon." *See also* Wis. Stat. § 941.26 ("Machine guns and other weapons; use in certain cases; penalty."). Possession is listed in § 941.26 under the heading "use."

¶ 30. To sum up, the dictionary definitions of the noun "use" include "the power or ability to use something," and that meaning of the word is broad enough—"elastic" enough in the language of Judge Nettesheim—to include conscious possession with an ability to use. "Going armed with a concealed and dangerous weapon" clearly adds up to conscious possession with an ability to use. Thus, going armed with a concealed and dangerous weapon is one example of "commit[ting] a crime involving the use of the dangerous weapon."

¶ 31. The statute yields at least three other clues that our interpretation is correct. First, employment of the word "involving" in the phrase "involving the use" in Wis. Stat. § 968.20(1m)(b) is evidence that the statute applies to more than the "active use" of a dangerous weapon. "Involving" is a broad term. "Involve" is defined as: "1. To contain as a part; include. 2. To have as a necessary feature or consequence; entail." *The American Heritage Dictionary of the English Language* 950 (3d ed. 1992). The offense of carrying a concealed and dangerous weapon certainly involves a dangerous weapon. It involves the use of the dangerous weapon to effect conscious possession, including placement of the weapon on the defendant's person or within the defendant's reach. "A firearm may be involved in the commission of some crimes by its mere presence." *State*

*v. Williams*, 148 Wis. 2d 852, 861, 436 N.W.2d 924 (Ct. App. 1989) (Dykman, J., concurring).

¶ 32. Second, the statute also contains the following sentence: "'The property may be returned to the rightful owner under this section if the owner had no prior knowledge of and gave no consent to the commission of the crime." Wis. Stat. § 968.20(1m)(b). Here, it cannot be denied that Perez had prior knowledge of and gave consent to the commission of the crime. He committed the crime. Looking beyond this case, however, the statute prevents a rightful owner of a dangerous weapon from reobtaining the dangerous weapon if the owner has prior knowledge of or gives consent to the commission of a crime by another person with the dangerous weapon. When the owner simply allows "the use" of his dangerous weapon in the commission of a crime, the owner cannot get the dangerous weapon back. The forfeiture does not require the owner's "active use" of the dangerous weapon.

¶ 33. Third, Wis. Stat. § 968.20(1m)(b) prohibits the return of ammunition to a person who committed a crime involving the use of the ammunition. In one sense, ammunition is actively used when it is fired. However, used ammunition is not likely to be the subject of a motion under § 968.20, because people do not go to court to obtain spent shells. Section 968.20 must therefore refer to uses of the ammunition other than firing it. Ammunition can be actively used when it is placed in a firearm; but if placing ammunition in a firearm is active use, then placing a firearm on the person or within the reach of a person also must be active use.

¶ 34. Perez contends that this interpretation of "use" is incorrect, that the legislature intended a narrower interpretation requiring active use. In his brief,

Perez argued that he is not the type of person contemplated by the seizure statute, that he was not actively using the dangerous weapons in any manner, and that it was the legislature's intent and the plain and unambiguous meaning of the statute that only those dangerous weapons actually "used" in the commission of a crime would be subject to seizure and forfeiture.

¶ 35. The State itself acknowledges that "the statute may reasonably be read to require that the defendant made a more active use of the weapon—by brandishing or firing it, for example—during the commission of a crime." The State contends, however, that the statute is ambiguous, so that resort to extrinsic evidence to elucidate the legislature's intent is warranted.

¶ 36. The language of the statute supports our interpretation. Nonetheless, because reasonable minds could interpret the phrase "involving the use" in § 968.20(1m)(b) in different ways, we find the statute ambiguous. Therefore, we may look to the scope, history, context, subject matter, and object of the statute to clarify its meaning and confirm our interpretation. *Teague*, 236 Wis. 2d at ¶ 17.

B. Legislative History

¶ 37. We begin by examining the legislative history of Wis. Stat. § 968.20. Section 968.20 and its predecessors have governed the disposition of property seized in Wisconsin since at least 1849. Section 4, ch. 142, Laws of 1849 provided that once seized property was no longer needed as evidence, stolen or embezzled property was to be returned to its owner, and all other property was to be destroyed. The statute contained no

special provision for the disposition of firearms or other dangerous weapons. § 4, ch. 142, Laws of 1849.[8]

¶ 38. In 1925, the legislature created Wis. Stat. § 363.04 as part of a new statutory numbering system. Section 363.04 (1925) was virtually identical to § 4, ch. 142, Laws of 1849.

¶ 39. In 1949, the legislature amended § 363.04 to provide for the treatment of firearms and like material.[9] § 233, ch. 631, Laws of 1949.[10]

¶ 40. In 1969, the legislature created Wis. Stat. § 968.20 when it enacted § 63, ch. 255, Laws of 1969. This newly created statute did not contain a special provision for the disposition of firearms.[11] *Williams*, 148 Wis. 2d at 856. An accompanying note stated:

---

[8] Section 4, ch. 142, Laws of 1849, provided in part:

When any officer, in the execution of a search warrant, shall find any stolen or embezzled property, or shall seize any other things. . .all the property and things, so seized, shall be safely kept. . .so long as shall be necessary for the purpose of being produced as evidence and. . .afterwards, all such stolen and embezzled property shall be restored to the owner thereof, and all other things seized. . .shall be destroyed.

[9] A new subsection in Wis. Stat. § 363.04 (1949) provided in part: "(8) Firearms, Explosives, Etc. Firearms, ammunition, explosives, bombs, infernal machines, and like devices, which have been used in the commission of a crime, shall be shipped to and become the property of the state crime laboratory."

[10] In 1955, the legislature renumbered § 363.04 as § 963.04, but did not substantively amend the statute. § 13, ch. 660, Laws of 1955.

[11] Wisconsin Stat. § 968.20 (1969) provided in part:

(1) Any person claiming the right to possession of property seized. . .may apply for its return to the county court for the county in which the property was seized or where the search warrant was returned. The court shall. . .hold a hearing to hear all claims to its true ownership. If the right to possession is proved to the court's

This section is a new provision which establishes a simplified procedure for obtaining the return of property seized with or without a warrant. Obviously if such property is needed for use as evidence, it need not be returned unless arrangements can be made for its subsequent use as evidence. Contraband need never be returned.

Judicial Council Criminal Rules Committee Note, § 63, ch. 255, Laws of 1969.

¶ 41. In 1977, the legislature decided to add a subsection for the disposition of firearms, creating subsection 968.20(3).[12] This new subsection did not distinguish firearms involved in the commission of a crime. *Williams*, 148 Wis. 2d. at 857.

¶ 42. In 1979, the legislature repealed and recreated Wis. Stat. § 968.20(3), but again did not specifically account for firearms involved in the commission of a crime.[13] § 844, ch. 221, Laws of 1979.

---

satisfaction, it shall order the property, other than contraband, returned if:

(a) The property is not needed as evidence or, if needed, satisfactory arrangements can be made for its return for subsequent use as evidence; or

(b) All proceedings in which it might be required have been completed.

[12] Wisconsin Stat. § 968.20(3) (1977) provided in part:

(a) The custodian of a seized firearm if the firearm is not required for evidence or use in further investigation. . .shall make reasonable efforts to notify all persons who have or may have an interest in the firearm of the provisions of sub. (1). If. . .an application. . .is not made. . .the seized firearm shall be shipped to and become property of the state crime laboratory.

[13] Wisconsin Stat. § 968.20(3) (1979) provided in part:

(a) First class cities shall dispose of firearms or ammunition seized 12 months after taking possession of them if the owner has not requested their return and if the firearm or ammunition is not required for evidence or use in further investigation and has not

¶ 43. In 1983, the legislature created § 968.20(1m), for the first time providing different treatment for firearms involved in the commission of a crime.[14] The bill that created § 968.20(1m)(b), (1983 A.B. 661), was drafted by Bruce Feustel of the Legislative Reference Bureau (LRB), at the request of the Department of Justice. Legislative Reference Bureau Drafting File for 1983 Wis. Act 278, Legislative History of 1983 Assembly Bill 661.

¶ 44. A memorandum to the LRB from Howard Bjorklund, Administrator of the Law Enforcement Services Division, on the subject of "Proposed Legislation/Firearms Disposition" stated in part: "You've inquired about the above subject and provided memoranda from Mike Zaleski. I agree with Mike that sec. 968.20, Wis. Stats., is in need of revision. There certainly should be no opportunity for the return of a firearm to the perpetrator of a crime." Legislative Reference Bureau Drafting File for 1983 Wis. Act 278, memorandum from Howard Bjorklund to the Legislative Reference Bureau (Oct. 25, 1982).

---

been disposed of pursuant to a court order at the completion of a criminal action or proceeding. . . .If the return of the seized firearm or ammunition is not requested by its owner under sub. (1) and is not returned by the officer under sub. (2), the seized firearm or ammunition shall be shipped to and become property of the state crime laboratory.

[14] Wisconsin Stat. § 968.20(1m)(b) (1983) provided:

If the seized property is a firearm or ammunition, the property shall not be returned to any person who committed a crime involving the use of the firearm or the ammunition. The property may be returned to the rightful owner under this section if the owner had no prior knowledge of and gave no consent to the commission of the crime. Property which may not be returned to an owner under this subsection shall be disposed of under subs. (3) to (5).

¶ 45. The Department of Justice's "drafting request" for 1983 A.B. 661 stated the subject of the bill as "no return of firearm to perpetrator."[15] Legislative Reference Bureau Drafting File for 1983 Wis. Act 278, Drafting Request (Dec. 6, 1982).

¶ 46. The LRB's analysis of 1983 A.B. 661 provides in relevant part:

> This proposal revises the treatment of seized firearms or ammunition. If the person committed a crime with a firearm or ammunition, the firearm or ammunition may not be returned to him or her. The rightful owner of a seized firearm or ammunition may reobtain that property if the owner had no prior knowledge of and gave no consent to the commission of the crime.

Legislative Reference Bureau Drafting File for 1983 Wis. Act 278, Analysis by the Legislative Reference Bureau. The LRB's analysis does not refer to committing a crime "involving the use of the firearm," but to committing a crime "with" the firearm.

¶ 47. "With" is a broad term that carries multiple common and accepted meanings, including "in the company of; accompanying," "having as a possession," and "by the means or agency of." *The American Heritage Dictionary of the English Language* 2050 (3d ed. 1992). Therefore, the LRB analysis indicates that the drafters of 1983 A.B. 661 believed that the legislature intended to prohibit the return of a seized firearm to a person

---

[15] "Perpetrate" means "to be responsible for; commit." *The American Heritage Dictionary of the English Language* 1349 (3d ed. 1992). A "perpetrator" is therefore one who is responsible for a crime or one who commits a crime. Thus, the drafting request was for a bill to prohibit the return of firearms to persons who commit or are responsible for crimes.

who committed a crime "in the company of," "accompanying," "having as a possession," or "by the means or agency of" the firearm.

¶ 48. The legislative intent behind Wis. Stat. § 968.20 was made abundantly clear in late 1994. Shortly after the 1994 elections, Representative John Dobyns wrote to the LRB, asking for a bill draft for the coming session. Dobyns wrote:

> Under current law, people convicted of carrying a concealed weapon are later allowed to retrieve from the police agency the concealed weapon that was confiscated. I would like language drafted that would require forfeiture of the weapon upon conviction. The weapon can either be destroyed or used for educational purposes by the police department.

Legislative Reference Bureau Drafting File for 1995 Wis. Act 157, Bill Request Form (Nov. 18, 1994).

¶ 49. Bruce Feustel, Senior Legislative Attorney, responded to the request, stating:

> You asked for a draft to require the forfeiture of a weapon after a person has been convicted of the crime of carrying a concealed weapon. I mentioned that I thought we had a statutory requirement that at least covered firearms. . . .The current applicable law is contained in s. 968.20(1m)(b). . .This brings up 2 questions. First, does "going armed" with a concealed and dangerous weapon (as required in s. 941.23) meet the standard of "a crime involving the use of a firearm?" From a common sense reading, "going armed" involves a type of use of a weapon. . . .You may want to go over this statute with the person who raised this problem. If this existing statute is fine as is, then we don't need to make any changes. . . .We could draft a specific statute dealing only with the crime of carrying a concealed weapon. If the problem involves the word "use" in s.

605

968.20(1m)(b), we could change the wording to be "use, carry or possess" instead.

Legislative Reference Bureau Drafting File for 1995 Wis. Act 157, memo from Bruce Feustel to Representative John Dobyns (Dec. 16, 1994).

¶ 50. Representative Dobyns, in turn, replied that the problem he had in mind did not involve firearms. The "problem was occurring where the confiscated weapons were knives, throwing stars, etc.—items that were weapons but not firearms. Revise restriction on firearms in 968.20(1m)(b) broaden to weapons." Legislative Reference Bureau Drafting File for 1995 Wis. Act 157, memo from Representative John Dobyns to Bruce Feustel, Senior Legislative Attorney (December 20, 1994).

¶ 51. Hence, the bill ultimately drafted simply expanded the scope of § 968.20(1m)(b) from "firearms and ammunition" to all "dangerous weapons and ammunition." The LRB analysis of the Dobyns bill reads in part:

> Current law also includes a specific provision stating that a seized firearm may not be returned to a person who committed a crime with the firearm. This bill broadens the restriction to prohibit the return of any dangerous weapon that a person used in connection with a crime. Further, all of the current provisions for the retention or destruction of seized firearms are made applicable to seized dangerous weapons.

Legislative Reference Bureau Drafting File for 1995 Wis. Act 157.

¶ 52. We conclude from this legislative history that 1983 Wis. Act 278, which prohibited the return of

a firearm seized from persons who "committed a crime involving the 'use' of the firearm," reflected a serious legislative concern with firearms involved in the commission of a crime. The intention then and the intention confirmed in 1994–1995 was that a dangerous weapon seized in a carrying a concealed and dangerous weapon conviction should not be returned.

C. Purpose, Scope, and Context

¶ 53. We next examine the purpose, scope, and context of Wis. Stat. § 968.20(1m)(b), and find that they also support a determination that the statute prohibits the return of seized dangerous weapons to those who have committed the crime of carrying a concealed and dangerous weapon. The court of appeals has identified two purposes of § 968.20(1m)(b):

> First it operates before the fact to deter persons from using firearms in the commission of crimes. Second, and most important, it minimizes the likelihood that a firearm which has been used in the commission of crime will find its way back into the hands of the criminal or into the hands of his or her associates who may likewise be inclined to criminal activity.

*Williams*, 148 Wis. 2d at 858.

¶ 54. The first purpose of the statute is deterrence, which is one of the principal objectives of the criminal law. The criminal code increases the penalty for an offender who commits a crime while possessing, using, or threatening to use a dangerous weapon. Wis. Stat. § 939.63. The increased penalty is intended to discourage the use of dangerous weapons in the commission of crimes by creating fear of additional

punishment. Logically, the loss of dangerous weapons through forfeiture is also intended to deter the use of dangerous weapons in the commission of crimes. Conversely, the return of dangerous weapons to persons who have committed crimes with them undermines deterrence. If people understand the risk of forfeiture on top of criminal prosecution, they are more likely to comply with the law.

¶ 55. The second purpose is to minimize the likelihood that a dangerous weapon will find its way back into the hands of a criminal or the criminal's associates. The objective not to rearm persons who have abused dangerous weapons is sensible, because these persons may be inclined to abuse the dangerous weapons again. This premise certainly underlies the statute that prohibits a convicted felon from possessing any firearm. Wis. Stat. § 941.29(2)(a). When the State has seized a dangerous weapon because of the use of that weapon in a crime, the use of that weapon in a subsequent crime inflicts an injury and jeopardizes public confidence.

¶ 56. Perez's interpretation of the statute has the opposite effect. It would return dangerous weapons to offenders who have committed offenses with the dangerous weapons but have not "actively" employed them in the commission of the crimes.

¶ 57. Our interpretation of Wis. Stat. § 968.20(1m)(b) in relation to Wis. Stat. § 941.23 will promote judicial efficiency. In concluding that § 968.20(1m)(b) prohibits the return of a dangerous weapon to a person convicted of carrying a concealed and dangerous weapon, we create a bright-line rule in the application of the law. Conscious possession of a

concealed and dangerous weapon is an element of the offense.

¶ 58. Wisconsin Stat. § 968.20(1m)(b) provides that "the property shall not be returned to any person who committed a crime involving the use of the dangerous weapon or the ammunition." This statute has application to many crimes in addition to carrying a concealed and dangerous weapon.

¶ 59. It arguably applies to crimes in which "the use of the dangerous weapon" may require more than conscious possession of the weapon to satisfy the forfeiture statute, especially if conscious possession of the weapon is *not* an element of the offense. This presents a question that is not before us. In this case, we decide only that going armed with a concealed and dangerous weapon involves such conscious possession or other use of the dangerous weapon that the State will not be required to prove some additional factor to prevent the return of the dangerous weapon to the offender under Wis. Stat. § 968.20(1m)(b). Where the element of "use" has been established by conviction, we see no point in relitigating the issue.

¶ 60. Perez argues that he is not the type of person for whom Wis. Stat. § 968.20 was intended. We conclude, however, that § 968.20 was intended to prohibit the actions taken by Perez, inasmuch as a dangerous criminal could have undertaken these same actions. The forfeiture statute does not distinguish between "good" lawbreakers and "bad" ones. Perez pled "no contest" to a charge of carrying a concealed and dangerous weapon. In doing so, he conceded that he had unlawfully gone armed with a dangerous weapon. He was driving a van with a loaded handgun on the floor next to the driver's seat, and a rifle and a loaded

609

shotgun within reach. Returning these dangerous weapons to Perez is fundamentally at odds with a common sense interpretation of the forfeiture statute.

## IV. CONCLUSION

¶ 61. We conclude that a seized dangerous weapon may not be returned to a person convicted of the crime of carrying a concealed and dangerous weapon. A person convicted of carrying a concealed and dangerous weapon contrary to Wis. Stat. § 941.23 has "committed a crime involving the use of the dangerous weapon," because "the use" of the dangerous weapon is an indispensable element of a § 941.23 offense. Moreover, our textual and historical analysis of Wis. Stat. § 968.20(1m)(b) convinces us that the legislature intended forfeiture of dangerous weapons in this situation. We therefore remand to the circuit court with instructions to enter an order denying Perez's motion for the return of the dangerous weapons that were seized from him.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 62. JON P. WILCOX, J. *(concurring)*. I concur with the majority opinion but write separately to emphasize the importance of prosecutorial discretion in our judicial system, particularly in the present context involving the forfeiture of hunting gear. The majority notes that "[t]he forfeiture statute does not distinguish between 'good' lawbreakers and 'bad' ones." Majority op. at ¶ 60. The failure of our statutes to make such distinctions is a primary justification for prosecutorial discretion, which is grounded in Wis. Stat. § 968.02(1). As the court of appeals has noted,

"[t]he duty of a district attorney is to administer justice, not obtain convictions. As such, district attorneys are under no obligation or duty to charge in all cases where there appears to be a violation of the law." *State v. Jones*, 217 Wis. 2d 57, 64, 576 N.W.2d 580 (Ct. App. 1998). A prosecutor's discretion in pursuing a violation of the law, then, is " 'quasi-judicial' ". *State v. Karpinski*, 92 Wis. 2d 599, 607, 285 N.W.2d 729 (1979).

¶ 63. While I believe that the State might have wielded its power more judiciously in the present case, it is not my role to question the exercise of prosecutorial discretion.[1] Nevertheless, I observe that the purpose of Wis. Stat. § 968.20(1m)(b) is to keep dangerous weapons out of the hands of criminals who may commit future crimes with those weapons. The legislature did not intend to deprive any of the over 500,000 Wisconsin resident sportsmen and sportswomen of their hunting gear.[2] If prosecutors injudiciously seek forfeiture of hunting gear under § 968.20(1m)(b), they will under-

---

[1] On the accountability of prosecutors, we have explained, "the district attorney is answerable to the people of the state and not to the courts or the legislature as to the manner in which he or she exercises prosecutorial discretion." *State v. Annala*, 168 Wis. 2d 453, 473, 484 N.W.2d 138 (1992). "Political review through the electoral process is sufficient to ensure the proper applications of prosecutorial discretion." *Id.* Therefore, "[w]e will not impair, without authority or reason, district attorneys' discretionary decisions of whether to initiate forfeiture proceedings or not." *Jones v. State*, 226 Wis. 2d 565, 585, 594 N.W.2d 738 (1999).

[2] Wisconsin Department of Natural Resources, *License and Registration Sales Per County*, 2000. The Department of Natural Resources issued 483,419 gun deer permits, 171,978 resident archery permits, 128,946 small game permits, 8162 resident class B bear permits, 55,680 water-fowl stamps, 31,911 pheasant stamps, and 63,194 turkey stamps.

mine public support for sensible laws governing dangerous weapons.

¶ 64. Accordingly, I would urge district attorneys to exercise their prosecutorial discretion to pursue criminals that "use" weapons in commission of crime, as the term is ordinarily understood, in accord with the legislature's intent, rather than pursuing forfeiture actions against sportswomen and sportsmen. By exercising prosecutorial discretion in a judicious manner, district attorneys will avoid the danger of overwhelming our court system with charges that are contrary to the legislature's intent. Moreover, such judicious use of the forfeiture statute where hunting gear is involved will reinforce the public's confidence in the judicial system.

¶ 65. I am authorized to state that Justice N. PATRICK CROOKS joins this concurrence.