In re the RETURN OF PROPERTY IN:
STATE of Wisconsin v. Steven Michael LEONARD:

Steven Michael LEONARD, Appellant,

v.

STATE of Wisconsin, Respondent.

Court of Appeals

*No. 2014AP2892. Submitted on briefs April 28, 2015.
—Decided June 16, 2015.*

2015 WI App 57

(Also reported in 868 N.W.2d 186.)

491

On behalf of the appellant, the cause was submitted on the briefs of *John R. Monroe*, Roswell, GA.

On behalf of the respondent, the cause was submitted on the brief of *Brian P. Keenan*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Hoover, P.J., Stark and Hruz, JJ.

¶ 1. STARK, J. Steven Leonard appeals an order denying his motion for the return of firearms and ammunition that were seized from his home following events that culminated in Leonard being convicted of one count of disorderly conduct. The circuit court determined Leonard was prohibited from possessing firearms and ammunition, pursuant to 18 U.S.C. § 922(g)(9), because his disorderly conduct conviction constituted a misdemeanor crime of domestic violence under federal law. In the alternative, the court concluded the crime for which Leonard was convicted involved the use of the guns and ammunition, and WIS. STAT. § 968.20(1m)(b)[1] therefore barred their return.

¶ 2. We conclude one of Leonard's guns—a .44 Magnum revolver—was used in the commission of the disorderly conduct offense for which Leonard was convicted. Accordingly, the circuit court properly denied Leonard's motion for the return of that gun under WIS. STAT. § 968.20(1m)(b). However, with respect to the other guns and ammunition, we agree with Leonard that those items were not used in the commission of the disorderly conduct offense, and, as a result,

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

§ 968.20(1m)(b) does not bar their return. In addition, we conclude the complaint and plea hearing transcript provide no basis for this court or the circuit court to determine whether, under the circumstances, Leonard's disorderly conduct conviction qualifies as a misdemeanor crime of domestic violence under federal law. We therefore affirm that portion of the circuit court's order denying Leonard's motion for return of the .44 Magnum revolver but reverse regarding the other guns and ammunition.

## BACKGROUND

¶ 3. A criminal complaint charged Leonard with disorderly conduct, domestic abuse. The complaint alleged that Leonard engaged in

> violent, boisterous, and otherwise disorderly conduct, under circumstances in which such conduct tended to cause a disturbance, to wit: having been drinking alcohol, at 3:30 a.m., kick[ed] in the locked door of his residence, scaring his wife . . ., obtain[ed] a loaded handgun, and [left] the house threatening to kill himself[.]

¶ 4. As probable cause for the charge, the complaint alleged that police were dispatched to Leonard's home in Superior at 2:42 a.m. on February 3, 2014, "on a report of a disturbance." At the residence, Leonard told police he had come home sometime after 2:00 a.m. after going out with friends for the Super Bowl. Leonard reported he and his wife began arguing "when he walked in the door."

¶ 5. Leonard's wife told police he had been "out drinking with his friends all night[,]" and she was sleeping on the couch when he came home. She woke to find Leonard standing over her, and he "instantly

started to yell at her," calling her a "bully" and "the meanest person he knows." Leonard's wife told him to go to bed, and he then "made a comment about a 'head butt' " and "got close to her[.]" However, there was no physical contact between them, and Leonard's wife stated she was not afraid at that point. She told police she wanted Leonard to either go to bed or leave the house. Leonard then informed police he intended to sleep in the garage in his truck. Police told Leonard they "were not going to force him to go somewhere else, but if he went back into the house, it would be very likely that someone would be arrested."

¶ 6. After police left the residence, Leonard sent his wife multiple text messages stating he hated her and threatening suicide. Leonard's wife called 911 at 3:31 a.m. and reported to dispatch that Leonard had kicked in the back door of the house, obtained a .44 Magnum handgun, and was threatening to shoot himself. When officers returned to the residence, Leonard was sitting in the garage in the driver's seat of his truck. Officers observed fresh damage to the back door of the house, as well as a boot print on the door similar to the boots Leonard was wearing. Leonard was placed under arrest, and during a subsequent search of the garage, officers found a loaded .44 Magnum handgun in a box near the passenger-side front corner of Leonard's truck. Leonard's wife told police she had not been "assaulted," and Leonard did not threaten her with the handgun. She initially denied fearing for her safety, but she later admitted being afraid because Leonard had "expressed hatred for her in the last couple days[.]"

¶ 7. On September 17, 2014, Leonard pled no contest to disorderly conduct, without the domestic

abuse modifier, pursuant to a plea agreement.[2] During the plea colloquy, the circuit court specifically explained that the disorderly conduct charge alleged Leonard had "engage[d] in violent, boisterous, and otherwise disorderly conduct under circumstances in which such conduct tended to cause a disturbance[.]" The court also recited the allegations from the complaint that Leonard, "[h]aving been drinking alcohol at 3:30 a.m., kick[ed] in the locked door of his residence, scaring his wife . . ., obtain[ed] a loaded handgun, and [left] the house threatening to kill himself." Leonard confirmed that he understood the charge, and his attorney stipulated that there was a factual basis for Leonard's no contest plea. The court accepted Leonard's plea, and Leonard did not appeal his conviction.

¶ 8. On October 23, 2014, Leonard filed a motion under Wis. Stat. § 968.20(1), seeking the return of seven firearms and numerous rounds of ammunition that were seized from his residence on the night of his arrest, including the .44 Magnum handgun.[3] In re-

_____

[2] At the subsequent hearing on Leonard's motion for return of the firearms and ammunition, the prosecutor explained that the State had planned to go to trial, but the victim "was not willing to cooperate with the [S]tate in testifying." The prosecutor further stated "lots of distinctive factors" contributed to the State's decision to drop the domestic abuse modifier, including "the insistence of the alleged victim[.]" The prosecutor asserted removal of the domestic abuse modifier was not intended as a concession that Leonard was entitled to return of his firearms and ammunition.

[3] Wisconsin Stat. § 968.20(1) permits "any person claiming the right to possession of property seized pursuant to a search warrant or seized without a search warrant" to "apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned."

sponse, the State argued Leonard was not entitled to return of the firearms and ammunition because he was not allowed to possess them under federal law—specifically, 18 U.S.C. § 922(g)(9). The circuit court agreed that § 922(g)(9) prohibited Leonard from possessing firearms and ammunition because his disorderly conduct conviction qualified as a "misdemeanor crime of domestic violence" under federal law. In the alternative, the court held that § 968.20(1m)(b) prohibited return of the firearms and ammunition because they were used in the commission of the crime for which Leonard was convicted. The court entered a written order denying Leonard's motion for return of the firearms and ammunition on November 17, 2014. Leonard now appeals.[4]

## DISCUSSION

■■

¶ 9. Leonard argues WIS. STAT. § 968.20(1m)(b) does not prohibit return of his firearms and ammunition because they were not used in the commission of the crime for which he was convicted. Leonard also argues he is not barred from possessing the firearms and ammunition under 18 U.S.C. § 922(g)(9) because he was not convicted of a misdemeanor crime of domestic violence, as the federal statutes and relevant case law define that term. Our resolution of these issues requires us to interpret the relevant statutes and apply them to a set of undisputed facts. This

---

[4] In addition to the firearms and ammunition, police also seized a smoke grenade from Leonard's residence on the night of his arrest. The circuit court ordered the smoke grenade returned to Leonard, and the State has not appealed that ruling.

presents a question of law that we review independently. *State v. Perez*, 2001 WI 79, ¶ 12, 244 Wis. 2d 582, 628 N.W.2d 820.

## I. Wisconsin Stat. § 968.20(1m)(b)

■
¶ 10. As one of the grounds for its ruling that Leonard was not entitled to return of the firearms and ammunition seized from his residence, the circuit court concluded the return was prohibited by Wis. Stat. § 968.20(1m)(b), which states, "If the seized property is a dangerous weapon or ammunition, the property shall not be returned to any person who committed a crime involving the use of the dangerous weapon or the ammunition." Leonard argues the circuit court erroneously applied this statute. However, as a threshold matter, he also argues the court's decision must be reversed because the court improperly raised the issue of § 968.20(1m)(b) sua sponte.

¶ 11. Specifically, Leonard argues the court's sua sponte reliance on Wis. Stat. § 968.20(1m)(b) deprived him of his right to due process because the court did not give him an opportunity to present argument on the issue of whether the firearms and ammunition were used in the commission of the crime for which he was convicted. He also argues the court's sua sponte reliance on § 968.20(1m)(b) "deprived [him] of an opportunity to present evidence that forfeiture of the firearms violated the 8th Amendment's prohibition against excessive fines." *See State v. Bergquist*, 2002 WI App 39, ¶ 1, 250 Wis. 2d 792, 641 N.W.2d 179 ("[N]onreturn of weapons used in the commission of a crime, pursuant to § 968.20(1m)(b), constitutes a forfeiture subject to the Excessive Fines Clause of the

Eighth Amendment to the United States Constitution."). Leonard asserts he "had no reason to bring up Excessive Fines clause issues because he had no notice the circuit court intended to supply the State with a different reason for denial" of his motion. He contends the specific basis for the court's ruling is significant because

> [i]n the case of use of firearms to commit a crime, the firearms are contraband and subject to seizure/forfeiture. On the other hand, in the case of a misdemeanor crime of domestic violence, the misdemeanant merely is prohibited from possession. He [or she] is not deprived of the beneficial ownership of the firearms, and is free to sell them to third parties and receive the value of [the] property[.]

¶ 12. The basis for Leonard's claim that the circuit court raised WIS. STAT. § 968.20(1m)(b) sua sponte is the fact that the State did not rely on that statute during the hearing on Leonard's motion for return of the firearms and ammunition. However, what Leonard fails to point out is that he himself raised the issue in his motion for return of the property. In the affidavit in support of his motion, Leonard averred that the firearms and ammunition "were not used by me in a commission of any crime." He further averred:

> [T]he probable cause section of the criminal complaint shows that none of the items which were seized . . . were used in the commission of a crime. The mere possession of a firearm or ammunition does not violate § 968.20 . . .; firearms must be part of the crime in some way.

These averments are apparent references to § 968.20(1m)(b).

¶ 13. Moreover, "it is well recognized that courts may *sua sponte* consider legal issues not raised by the parties." *State v. Holmes*, 106 Wis. 2d 31, 39–40, 315 N.W.2d 703 (1982). This authority is "the natural outgrowth of the court's function to do justice between the parties." *Id.* at 39. "Any objection to the circuit court's raising [an] issue sua sponte on the grounds of . . . theoretical unfairness to the litigants is diminished or eliminated by the circuit court's giving the litigants notice of its consideration of the issue and an opportunity to argue the issue." *Id.* at 40–41.

¶ 14. Here, even though the State did not rely on Wis. Stat. § 968.20(1m)(b) during the motion hearing, Leonard was clearly on notice that the statute could provide a basis for denying his motion for return of the firearms and ammunition, given the averments in his affidavit. Knowing that § 968.20(1m)(b) was at issue, Leonard could have presented additional evidence or argument regarding the statute during the motion hearing, but he failed to do so. Alternatively, after the circuit court made it clear it planned to rely on § 968.20(1m)(b) as one of the grounds for its decision, Leonard could have asked to present additional evidence or argument on the issue, or moved for reconsideration. Again, he did not do so. Under these circumstances, the court's reliance on § 968.20(1m)(b) was not unfair to Leonard.

¶ 15. We therefore turn to Leonard's argument that the circuit court erroneously concluded Wis. Stat. § 968.20(1m)(b) barred the return of his firearms and ammunition because they were used in the commission of the crime for which he was convicted—disorderly

501

conduct.[5] With respect to the .44 Magnum handgun, Leonard argues that gun was not used in the commission of the crime because "the only role [it] played is that it was in Leonard's possession when he allegedly threatened to shoot himself." Leonard asserts the criminal complaint in this case recited "multiple behaviors" as grounds for the disorderly conduct conviction: "1) drinking; 2) kicking in the locked door of his residence; 3) scaring his wife; 4) obtaining a loaded handgun; and 5) leaving the house threatening to kill himself." Leonard argues that, when viewed individually, the only one of these behaviors that could possibly constitute disorderly conduct is kicking in the door. Leonard then notes there is no evidence the .44 Magnum was in his possession when he kicked in the door. Leonard therefore argues the .44 Magnum was not used in the commission of the disorderly conduct.

¶ 16. We disagree. A person commits disorderly conduct when he or she "in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance[.]" WIS. STAT. § 947.01. Pursuant to the allegations in the criminal complaint, which Leonard conceded provided a factual basis for his plea, Leonard's disorderly conduct conviction was not based on the single event of kicking in the locked door to his residence. Rather, it was based on a course of conduct that included kicking in the door, frightening his wife, and obtaining the .44 Magnum and threatening to kill himself. We therefore agree with the State and the circuit court that the .44

---

[5] Leonard does not dispute that the firearms constituted "dangerous weapon[s]," as that term is used in WIS. STAT. § 968.20(1m)(b).

Magnum was used in the commission of the crime for which Leonard was convicted. Accordingly, return of the .44 Magnum is barred by Wis. Stat. § 968.20(1m)(b).[6]

¶ 17. We agree with Leonard, however, that Wis. Stat. § 968.20(1m)(b) does not bar the return of the other guns and ammunition seized from his residence. The circuit court did not provide any analysis in support of its conclusion that Leonard's disorderly conduct conviction involved the use of those items. There is no evidence in the record that Leonard touched those items, referred to them, or attempted to access them during the events that formed the basis for his disorderly conduct conviction. Further, the State does not attempt to argue on appeal that the additional guns and ammunition were used in the commission of the crime. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not refuted are deemed conceded). Consequently, § 968.20(1m)(b) does not bar return of the additional guns and ammunition.

---

[6] Leonard also suggests the .44 Magnum was not "used" in the commission of the crime because there is no evidence Leonard pointed the gun at anyone, waved the gun around, or took any steps to implement his threat to kill himself. However, as the State points out, the phrase "use of the dangerous weapon" in Wis. Stat. § 968.20(1m)(b) extends beyond the active use of a weapon and includes "conscious possession with an ability to use." *See State v. Perez*, 2001 WI 79, ¶¶ 24–30, 244 Wis. 2d 582, 628 N.W.2d 820. Leonard consciously possessed and had the ability to use the .44 Magnum during the events that led to his disorderly conduct conviction.

## II. 18 U.S.C. § 922(g)(9)

¶ 18. The circuit court relied on 18 U.S.C. § 922(g)(9) as an alternative basis for its decision denying return of Leonard's firearms and ammunition. Section 922(g)(9) states that it is "unlawful for any person . . . who has been convicted . . . of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition[.]" A "misdemeanor crime of domestic violence" is defined as an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A) (footnote omitted).

¶ 19. It is undisputed that Leonard's disorderly conduct conviction is a misdemeanor under Wisconsin law. Leonard's appellate arguments therefore focus on the second prong of the definition of "misdemeanor crime of domestic violence." We have previously explained that the second prong of this definition has two requirements. *See Evans v. DOJ*, 2014 WI App 31, ¶ 5, 353 Wis. 2d 289, 844 N.W.2d 403. First, the offense must have as an element the use of physical force. *Id.* Second, the offense must have been committed by a person who has a specified domestic relationship with the victim. *Id.*

¶ 20. In *Evans*, we considered whether the use of physical force was an element of a disorderly conduct conviction, for purposes of 18 U.S.C. § 921(a)(33)(A). *See Evans*, 353 Wis. 2d 289, ¶ 2. We explained that there are two approaches to determining whether an offense has the use of force as an element. *See id.*, ¶ 18. Under the categorical approach, a court considers only the fact of conviction and the statutory definition of the offense. *Id.* Conversely, when a statute defines an element of an offense in the alternative, a modified categorical approach is used to determine which alternative formed the basis for the defendant's conviction. *Id.* Under the modified categorical approach, a court consults "a 'limited class of documents,' including charging documents, transcripts of plea colloquies, and jury instructions ... 'to identify, from among several alternatives, the crime of conviction.' " *Id.* (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281, 2285 (2013)).

¶ 21. We further explained in *Evans* that the crime of disorderly conduct has two elements under Wisconsin law: (1) engaging in conduct of a type or types enumerated in Wis. Stat. § 947.01; and (2) doing so under circumstances in which the conduct tends to cause or provoke a disturbance. *Evans*, 353 Wis. 2d 289, ¶ 10. Because the first element "allows for alternatives," we applied the modified categorical approach in *Evans* to determine which alternative formed the basis for the appellant's conviction. *Id.*, ¶¶ 10, 12, 18–19. We noted the appellant was convicted of disorderly conduct based on an allegation that he engaged in "violent, abusive and otherwise disorderly conduct." *Id.*, ¶ 12. We reasoned that "violent" conduct "necessarily implies the use of physical force[.]" *Id.* We therefore concluded the appellant's disorderly conduct

conviction "[had] the use of physical force as an element." *Id.* We noted, however, that the result might have been different had the types of behavior underlying the conviction been alleged in the disjunctive—that is, "violent, abusive, *or* otherwise disorderly conduct" —rather than the conjunctive. *Id.*, ¶ 20.

¶ 22. Similar to the appellant in *Evans*, Leonard was charged with and convicted of disorderly conduct based on an allegation that he engaged in "violent, boisterous, *and* otherwise disorderly conduct[.]" (Emphasis added.) Pursuant to *Evans*, the allegation of "violent" conduct "necessarily implies" the use of physical force. *Id.*, ¶ 12.

¶ 23. In light of *Evans*, Leonard does not dispute that the use of physical force was an element of his disorderly conduct conviction. Instead, he argues the disorderly conduct was not committed by a person who had a specified domestic relationship with the victim of the crime. *See* 18 U.S.C. § 921(a)(33)(A)(ii). He does not dispute that he was the current spouse of his wife at the time of the offense, nor does he dispute that "current spouse" is one of the qualifying relationships listed in § 921(a)(33)(A)(ii). However, he argues his wife was not the victim of his disorderly conduct because the physical force involved in that offense was not directed at her.[7] In support of this argument, Leonard cites the United States Supreme Court's recent decision in *United States v. Castleman*, 134 S. Ct. 1405 (2014).[8]

---

[7] Conversely, in *Evans v. DOJ*, 2014 WI App 31, ¶ 19 n.5, 353 Wis. 2d 289, 844 N.W.2d 403, the appellant admitted during his plea colloquy to pushing his stepdaughter out of a door.

[8] *United States v. Castleman*, 134 S. Ct. 1405 (2014), was issued one month after our decision in *Evans*, 353 Wis. 2d 289.

¶ 24. In *Castleman*, the defendant pled guilty in Tennessee court to having " 'intentionally or knowingly cause[d] bodily injury to' the mother of his child[.]" *Id.* at 1409. He was later charged in federal court with violating 18 U.S.C. § 922(g)(9), after authorities learned he was selling firearms. *Castleman*, 134 S. Ct. at 1409. The defendant moved to dismiss the § 922(g)(9) charges, arguing his Tennessee conviction did not qualify as a misdemeanor crime of domestic violence because it did not have as an element the use of physical force. *Castleman*, 134 S. Ct. at 1409. The district court granted his motion, concluding the use of physical force for purposes of § 922(g)(9) "must entail 'violent contact with the victim.' " *Castleman*, 134 S. Ct. at 1409 (quoting the district court's decision). The Sixth Circuit affirmed, reasoning the term "physical force" in § 922(g)(9) was tantamount to "violent force," and, accordingly, the defendant's conviction did not qualify as a misdemeanor crime of domestic violence because he "could have been convicted for 'caus[ing] a slight, nonserious physical injury with conduct that cannot be described as violent.' " *Castleman*, 134 S. Ct. at 1409–10 (quoted source omitted).

¶ 25. The United States Supreme Court reversed. The Court held that when Congress used the term "physical force" in 18 U.S.C. § 922(g)(9), it intended to incorporate the common law meaning of the term "force"—namely, "offensive touching." *Castleman*, 134 S. Ct. at 1410. The Court reasoned it "ma[de] sense for Congress to have classified as a 'misdemeanor crime of domestic violence' the type of conduct that supports a common-law battery conviction" because perpetrators of domestic violence are often prosecuted under generally applicable assault and battery laws. *Id.* at 1411. The Court also reasoned, "[W]hereas the

507

word 'violent' or 'violence' standing alone 'connotes a substantial degree of force,' that is not true of 'domestic violence.' " *Id.* (quoted source omitted). Rather, "domestic violence" is "a term of art encompassing acts that one might not characterize as 'violent' in a non-domestic context." *Id.* The Court explained:

> Minor uses of force may not constitute "violence" in the generic sense. For example, in an opinion that we cited with approval in [*Johnson v. United States*, 559 U.S. 133 (2010)], the Seventh Circuit noted that it was "hard to describe . . . as 'violence' " "a squeeze of the arm [that] causes a bruise." *Flores v. Ashcroft*, 350 F.3d 666, 670 ([7th Cir.] 2003). But an act of this nature is easy to describe as "domestic violence," when the accumulation of such acts over time can subject one intimate partner to the other's control. If a seemingly minor act like this draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a "misdemeanor crime of domestic violence."

*Castleman*, 134 S. Ct. at 1412.

¶ 26. The *Castleman* Court also rejected the defendant's argument that the legislative history of 18 U.S.C. § 922(g)(9) suggested Congress did not intend the statute to apply to acts involving minimal force. *Castleman*, 134 S. Ct. at 1415–16. The defendant noted that § 922(g)(9), as originally proposed, would have barred gun possession for any " 'crime of domestic violence,' " defined as any " 'felony or misdemeanor crime of violence, regardless of length, term, or manner of punishment.' " *Castleman*, 134 S. Ct. at 1415 (quoted source omitted). However, Congress "rewrote the provision to require the use of physical force in response to the concern 'that the term crime of violence

was too broad, and could be interpreted to include an act such as cutting up a credit card with a pair of scissors.' " *Id.* at 1416 (quoted source omitted). Based on this change, the defendant in *Castleman* argued Congress intended to narrow the scope of § 922(g)(9) to convictions based on " 'especially severe conduct.' " *Castleman*, 134 S. Ct. at 1416 (quoted source omitted). The Supreme Court disagreed, stating, "[A]ll Congress meant to do was address the fear that § 922(g)(9) might be triggered by offenses in which no force at all was *directed at a person.*" *Id.* (emphasis added).

■

¶ 27. Based on the above quotation from *Castleman*, Leonard argues a misdemeanor crime of domestic violence must involve physical force that is directed at a person—specifically, at the victim of the crime. Leonard argues that, in this case, the only instance of physical force described in the criminal complaint was his kicking in the door to his residence. Leonard contends that force was directed only at the door, rather than his wife. Consequently, he argues his wife was not a victim of the crime, for purposes of 18 U.S.C. § 922(g)(9).[9]

---

[9] At times, Leonard seems to suggest that the crime of disorderly conduct has no victim. However, the second element of disorderly conduct requires "circumstances in which the conduct tends to cause or provoke a disturbance." WIS. STAT. § 947.01. Accordingly, the victim of a disorderly conduct is any person who suffers from the conduct that tends to provoke a disturbance—that is, any person who is disturbed by the conduct. Leonard agreed at the plea hearing that he "kick[ed] in the locked door of his residence, *scaring his wife . . .*, obtain[ed] a loaded handgun, and [left] the house threatening to kill himself." (Emphasis added.) Leonard's wife, who was scared and disturbed by his actions, was therefore a victim of his disorderly conduct.

¶ 28. *Castleman* does suggest that crimes in which no force was directed at a person do not qualify as misdemeanor crimes of domestic violence for purposes of 18 U.S.C. § 922(g)(9). However, Leonard's appellate argument is based on the assumption that an act of physical force committed against an inanimate object can never be found to have been "directed at" a person. We reject that premise because, contrary to the Court's rationale in *Castleman*, it ignores the nature of domestic violence. Instead, for purposes of applying § 922(g)(9), we conclude an act of physical force against an inanimate object may qualify as being "directed at" a person when the evidence shows that the act was directed at frightening or intimidating the person. As the *Castleman* Court aptly explained, in the domestic violence context, the accumulation of relatively mild acts of physical force over time, such as squeezing an arm hard enough to cause a bruise, can work to "subject one intimate partner to the other's control." *Castleman*, 134 S. Ct. at 1412. The same principle applies when an act of physical force is performed against an inanimate object. This type of act, when part of a course of conduct manifestly directed at frightening or intimidating the victim, can subject the victim to the defendant's control just as effectively as a squeeze of the arm.

¶ 29. Here, one reasonable inference that can be drawn from the allegations in the criminal complaint is that Leonard engaged in a course of conduct on the night of his arrest that was directed at frightening and victimizing his wife. According to the complaint, Leonard returned home in the middle of the night, after drinking with friends, and immediately began

yelling at his wife, calling her a "bully" and the "meanest person he knows." Although there was no physical contact between them, Leonard's wife was sufficiently disturbed by his conduct to call the police. After police left the residence, Leonard sent his wife a number of text messages telling her he hated her and making suicidal statements. Then, a short time later, Leonard's wife again called the police, reporting that Leonard had kicked in the door of their residence, had obtained a handgun, and was threatening to shoot himself. The complaint alleges this conduct scared Leonard's wife. It further alleges that, although Leonard's wife initially denied fearing for her safety, she later admitted being afraid because Leonard had expressed "hatred" for her over the last few days. Thus, even though Leonard's wife was not physically harmed when he kicked in the door to their residence, a reasonable inference from the allegations in the complaint is that that act of physical force was directed at her in the sense that it was part of a course of conduct directed at frightening and intimidating her.[10]

---

[10] Leonard argues our conclusion that physical force against an inanimate object may qualify as being "directed at" a person leads to absurd results. For instance, he asserts that, under our analysis, the following circumstances would constitute a misdemeanor crime of domestic violence:

> Two teenage siblings are working in the household garden and one of them is startled by a snake. He loudly utters a string of profanities as he hacks at the snake with a hoe. His sister is scared by the encounter. He is convicted of disorderly conduct (for being loud, boisterous, profane, and violent).

Contrary to Leonard's assertion, the defendant's conviction in this example would not constitute a misdemeanor crime of domestic violence under our analysis. In the example, the defendant's use of physical force is not part of a course of conduct directed at intimidating his sister. Conversely, one

511

¶ 30. However, the inference that kicking in the door was part of a course of conduct directed at frightening and intimidating Leonard's wife is not the only reasonable inference that can be drawn from the allegations in the complaint. The complaint alleges that, at the time Leonard kicked in the door, he was locked out of his residence, in the middle of the night, in February. The complaint further alleges Leonard had been drinking on the night in question, which suggests he may have been intoxicated. The complaint also alleges Leonard made multiple suicidal statements before and after kicking in the door. These allegations create a reasonable inference that Leonard's act of kicking in the door was not directed at frightening and intimidating his wife, but, rather, was the act of an intoxicated person locked out in the cold. The allegations in the complaint further support an inference that Leonard's suicide threats and related conduct were not intended to frighten his wife, but were instead the result of his intoxication or genuine suicidal ideations.

¶ 31. Thus, the criminal complaint gives rise to competing, reasonable inferences regarding whether Leonard's actions on the night of his arrest, including his use of physical force, were intended to frighten and intimidate his wife. Choosing between these inferences would constitute a finding of fact, and the court of

reasonable inference from the allegations in the criminal complaint is that Leonard's act of kicking in the door to the residence was part of a larger course of conduct directed at intimidating his wife.

The other two examples given in Leonard's reply brief are distinguishable from this case for the same reason—neither example involves a course of conduct manifestly directed at intimidating the family member who was disturbed by the defendant's conduct.

appeals cannot find facts. *See Kovalic v. DEC Int'l*, 186 Wis. 2d 162, 172, 519 N.W.2d 351 (Ct. App. 1994). Although we review a circuit court's factual findings under the clearly erroneous standard, *see* WIS. STAT. § 805.17(2), the court in this case did not make any findings regarding Leonard's intent or motivation.[11] Accordingly, although we reject Leonard's argument that physical force against an inanimate object can never qualify as being "directed at" a person for purposes of 18 U.S.C. § 922(g)(9), we cannot determine whether the force used in this case was actually directed at Leonard's wife, in the sense that it was part of a course of conduct directed at frightening and intimidating her. We therefore reverse that portion of the circuit court's order denying Leonard's motion for return of his firearms and ammunition, aside from the .44 Magnum handgun.

*By the Court.*—Order affirmed in part; reversed in part.

[11] Theoretically, we could remand for the circuit court to make factual findings on the issue of Leonard's intent. However, under the modified contextual approach, the only documents the court would be able to consider would be the criminal complaint and the plea hearing transcript. *See Evans*, 353 Wis. 2d 289, ¶ 18 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281, 2285 (2013)). As explained above, those documents give rise to competing, reasonable inferences regarding Leonard's intent. Without taking other evidence, which it would be prohibited from doing, the circuit court would lack any reasonable basis to choose between these competing inferences.