# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP704 |

| | |
|---|---|
| COMPLETE TITLE: | Daniel Doubek,<br>　　　　Petitioner-Appellant,<br>　　v.<br>Joshua Kaul,<br>　　　　Respondent-Respondent. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 20, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 9, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Brown |
| JUDGE: | Kendall M. Kelley |

JUSTICES:

HAGEDORN, J., delivered the majority opinion for a unanimous court. KAROFSKY, J., filed a concurring opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the Petitioner-Appellant there were briefs filed by *John R. Monroe* and *John Monroe Law, P.C.* There was an oral argument by *John R. Monroe.*

For the respondent-respondent, there was a brief filed by *Brian P. Keenan*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Brian P. Keenan.*

**2022 WI 31**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP704
(L.C. No. 2019CV1350)

STATE OF WISCONSIN : IN SUPREME COURT

Daniel Doubek,

     Petitioner-Appellant,

  v.

Joshua Kaul,

     Respondent-Respondent.

**FILED**

**MAY 20, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

HAGEDORN, J., delivered the majority opinion for a unanimous Court. KAROFSKY, J., filed a concurring opinion.

---

APPEAL from a judgment and an order of the Circuit Court for Brown County, Kendall M. Kelley, Judge. *Reversed and cause remanded.*

¶1 BRIAN HAGEDORN, J. Wisconsin law provides that an individual who is prohibited from possessing a firearm under federal law may not hold a license to carry a concealed weapon (CCW license). Federal law, in turn, prohibits firearm possession for anyone who has been convicted of a "misdemeanor crime of domestic violence" under state or federal law. In this case, we address whether a conviction for disorderly conduct

under Wis. Stat. § 947.01(1) (2019-20)[1] qualifies as a misdemeanor crime of domestic violence. We hold that disorderly conduct is not a misdemeanor crime of domestic violence under federal law, and therefore does not disqualify a person from holding a CCW license.

## I. BACKGROUND

¶2 In 1993, Daniel Doubek broke into his estranged wife's trailer waving a 2x4 and shouting threats. He was convicted of disorderly conduct in violation of Wis. Stat. § 947.01(1)——a misdemeanor offense.[2] More than two decades later, in 2016, Doubek applied for and received a CCW license from the Department of Justice (DOJ). In 2019, DOJ conducted an audit and determined that Doubek was prohibited from possessing a CCW license based on his 1993 misdemeanor conviction. According to DOJ, Doubek's conviction constituted a disqualifying "misdemeanor crime of domestic violence" under federal law. See 18 U.S.C. § 922(g)(9). DOJ revoked Doubek's CCW license and sent a letter notifying him of its decision. Doubek petitioned for judicial review pursuant to Wis. Stat. § 175.60(14m). The

---

[1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

[2] When Doubek was convicted, disorderly conduct was defined at Wis. Stat. § 947.01 (1991-92). The crime has since been renumbered to Wis. Stat. § 947.01(1) but remains otherwise identical to the prior version. See 2011 Wis. Act 35, § 85. We therefore cite to the 2019-20 version of the statute throughout this opinion.

circuit court upheld DOJ's revocation of Doubek's CCW license.[3] The court of appeals certified the case to us, and we accepted the certification.[4]

## II. DISCUSSION

¶3 When DOJ revokes a CCW license, a reviewing court "shall reverse" if, among other reasons, DOJ "erroneously interpreted a provision of law and a correct interpretation compels a different action." Wis. Stat. § 175.60(14m)(f). We consider whether Doubek's revocation was consistent with § 175.60, the statute governing CCW licensing. That statute incorporates a federal firearms prohibition, which in turn relies on state penal law. Our interpretation of these statutes presents a question of law we review independently. Serv. Emps. Int'l Union, Loc. 1 v. Vos, 2020 WI 67, ¶28, 393 Wis. 2d 38, 946 N.W.2d 35. In interpreting federal statutes, we are bound by the United States Supreme Court's interpretation. James v. City of Boise, 577 U.S. 306, 307 (2016) (per curiam).

---

[3] The Honorable Kendall M. Kelley of the Brown County Circuit Court presided.

[4] The court of appeals certified the following question:

> Are Evans v. DOJ, 2014 WI App 31, 353 Wis. 2d 289, 844 N.W.2d 403, and Leonard v. State, 2015 WI App 57, 364 Wis. 2d 491, 868 N.W.2d 186, "good law" in light of the United States Supreme Court's decision in United States v. Castleman, 572 U.S. 157 (2014)?

As explained below, we overrule Evans. We decline to address Leonard, however, because it is unnecessary to resolve Doubek's petition.

3

## A. CCW Licensing

¶4   CCW licensing in Wisconsin is regulated in large part though Wis. Stat. § 175.60.  Among other things, this section governs when a CCW license shall or shall not issue, what an applicant must do to qualify for a license, when a licensee is authorized to carry a concealed weapon, and the processes DOJ must follow in administering the CCW program.  Relevant here, § 175.60(3)(b) provides that DOJ may not issue a license to an individual that "is prohibited under federal law from possessing a firearm that has been transported in interstate or foreign commerce."  And, if a prohibited individual holds a license despite that prohibition, § 175.60(14)(a) directs that DOJ "shall revoke a license issued under this section if the department determines that sub. (3)(b) . . . applies to the licensee."  Taken together, these provisions direct DOJ to deny or revoke a CCW license anytime federal law bars the would-be licensee from possessing a firearm.

## B. Federal Misdemeanor Crime of Domestic Violence Prohibition

¶5   In this case, that federal law is 18 U.S.C. § 922(g)(9), which prohibits anyone convicted of a "misdemeanor crime of domestic violence" from possessing a firearm.[5]   A

---

[5] In relevant part, 18 U.S.C. § 922(g) provides:

It shall be unlawful for any person . . .

(9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or

4

"misdemeanor crime of domestic violence" is not itself a standalone crime. Rather it refers to a class of crimes as defined one section earlier:

> [T]he term "misdemeanor crime of domestic violence" means an offense that——
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).

¶6 Doubek's crime was a misdemeanor under Wisconsin law, satisfying clause (i) of 18 U.S.C. § 921(a)(33)(A). Clause (ii) includes two criteria. United States v. Hayes, 555 U.S. 415, 421 (2009). First, the misdemeanor must "in fact" have been committed by someone who had a specified, domestic relationship with the victim. Id. This criterion depends on the facts underlying the conviction, not the elements of the charged misdemeanor. Id. at 426. The victim of Doubek's crime was his wife, and thus, the first criterion is undisputed. Our focus is therefore on the second criterion of clause (ii).

---

transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

¶7   The second criterion requires that the misdemeanor have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."   18 U.S.C. § 921(a)(33)(A)(ii).   The key here is that the misdemeanor must have either the force component or the deadly weapon component as an essential element of the crime; this does not depend on the facts underlying any specific conviction.   Hayes, 555 U.S. at 421.   Under this "categorical approach"——as the Court has termed it——the focus is "solely on whether the elements of the crime of conviction sufficiently match the elements" of the relevant federal statute, "while ignoring the particular facts of the case."   Mathis v. United States, 579 U.S. 500, 504 (2016).   The question is thus whether the elements of the statutorily defined misdemeanor itself, apart from the facts giving rise to it, include the use of physical force, the attempted use of physical force, or the threatened use of a deadly weapon.

¶8   Sometimes the task of comparing elements is complicated by the use of a list in the statute defining the relevant misdemeanor.   When that happens, the United States Supreme Court instructs us to determine whether the statute is indivisible or divisible, and then analyze whether the relevant elements match the applicable federal law.   Id. at 504-06.

¶9   An indivisible statute "sets out a single (or 'indivisible') set of elements to define a single crime." Id. at 504-05.   When an indivisible statute contains a list of alternatives, it "enumerates various factual means of committing

6

a single element." Id. at 506. Thus, a "jury could convict even if some jurors" thought the conduct satisfied one of the listed factual means while others concluded it satisfied another, "so long as all agreed" the conduct met one or more of the enumerated factual means. Id. Because an indivisible statute defines only one crime, no recourse to case records is needed to determine what type of conduct gave rise to the conviction. A court simply "lines up that crime's elements alongside those of the [federal law] and sees if they match." Id. at 505. This is the standard application of the categorical approach. Id. at 504-05.

¶10 Divisible statutes, on the other hand, "list elements in the alternative, and thereby define multiple crimes." Id. at 505. When faced with a divisible statute, courts use a "modified categorical approach" and look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id. at 505-06. The court then compares that specific crime to the relevant federal statute to see if they match. Id. at 506.

¶11 In this case, to determine whether Doubek's prior conviction constituted a misdemeanor crime of domestic violence, we must analyze whether the statute he was convicted under is indivisible or divisible.

7

## C. Wisconsin's Disorderly Conduct Statute

¶12 Doubek's prior conviction was for disorderly conduct under Wis. Stat. § 947.01(1). Doubek argues disorderly conduct does not have as a necessary element of the crime the actual or attempted use of physical force or the threatened use of a deadly weapon. He is correct.

¶13 Wisconsin's disorderly conduct statute provides:

> Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

Wis. Stat. § 947.01(1). Under this language, a person is guilty of this misdemeanor if: (1) the defendant engaged "in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct," (2) under circumstances that tend "to cause or provoke a disturbance." Id.; see also State v. Breitzman, 2017 WI 100, ¶57, 378 Wis. 2d 431, 904 N.W.2d 93.

¶14 The key interpretive question is whether "violent" and "boisterous" conduct, for example, are simply alternative factual circumstances that satisfy one of the two elements of disorderly conduct, or whether violent disorderly conduct is a different crime than boisterous disorderly conduct. Resting on a plain reading of the statute, we conclude Wisconsin's disorderly conduct statute is indivisible, and enumerates different means of committing the same crime. The language of Wis. Stat. § 947.01(1) is most naturally read as creating a single crime of disorderly conduct, while listing alternative

means to satisfy its first element. The focus of the list is any type of conduct that is disorderly. This is particularly seen by the inclusion of a general catchall term at the end: "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct." § 947.01(1) (emphasis added). This phrasing suggests the first six types of conduct listed are examples of conduct that qualify as disorderly, not alternative elements establishing distinct crimes. Were it otherwise, the statute would create a crime of "otherwise disorderly conduct"——a crime that would not make much sense since it would necessarily include the six types of conduct that come before. Nothing in the grammar or structure of the list separates the listed behaviors in a way that would suggest it codifies seven different crimes. The most straightforward understanding of § 947.01(1)'s text is that it provides a non-exhaustive list of means by which the single crime of disorderly conduct may be committed.

¶15 This understanding of the statute is in harmony with how it has long been interpreted. Our cases have consistently described disorderly conduct as having "two elements"——the "first element being that the defendants engaged in disorderly conduct, and the second element being that such conduct tended to cause or provoke a disturbance." State v. Zwicker, 41 Wis. 2d 497, 514, 164 N.W.2d 512 (1969); see also Breitzman, 378 Wis. 2d 431, ¶57. It would be a marked departure to read § 947.01(1) as creating seven different crimes.

9

¶16 The jury instructions are in accord. They describe disorderly conduct as a single "offense" with "two elements." Wis. JI——Criminal 1900, at 1 (2018). An included note likewise describes the various types of conduct as means to prove a single offense: "The Committee recommends selecting one of the terms [from the list] where possible, but believes it is proper to instruct on all alternatives that are supported by the evidence." Id. at 4. Nowhere do the jury instructions suggest there are seven separate disorderly conduct crimes, or that each version may be charged separately.

¶17 Finally, this appears to be how the statute has been applied in day-to-day practice as well. In this case, for example, Doubek's 1993 conviction was for "violent, abusive and otherwise disorderly conduct." Yet, Doubek was charged and convicted of only one count of disorderly conduct, not three. Other cases reveal the same pattern. See, e.g., Leonard v. State, 2015 WI App 57, ¶22, 364 Wis. 2d 491, 868 N.W.2d 186 (same); Evans v. Wis. Dept. of Just., 2014 WI App 31, ¶12 n.3, 353 Wis. 2d 289, 844 N.W.2d 403 (same).

¶18 In Evans, however, the court of appeals addressed the divisibility of the disorderly conduct statute in the same context and reached a different conclusion. It held that the violent conduct component of a disorderly conduct conviction under Wis. Stat. § 947.01(1) could constitute a separate element of the crime, depending on how it was charged. 353 Wis. 2d 289, ¶¶8-20. Evans is not consistent with the analytical framework clarified in recent United States Supreme Court cases and

10

described above. We conclude Evans must be overruled; § 947.01(1) is an indivisible statute subject to the standard categorical approach. See State v. Yakich, 2022 WI 8, ¶31, 400 Wis. 2d 549, 970 N.W.2d 12 ("[W]e are not bound by court of appeals decisions. As the state's highest court, we interpret legal questions independently.").

## D. Application

¶19 Turning to Doubek's petition, we start from our conclusion that Wis. Stat. § 947.01(1) is indivisible, defining only one crime. Therefore, by way of reminder, we look to the two elements of § 947.01(1)——and not to the facts of Doubek's particular conviction——to determine if it is a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(A). Recall that a crime qualifies as a misdemeanor crime of domestic violence only if it "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." 18 U.S.C. § 921(a)(33)(A)(ii). And under § 947.01(1), a person is guilty of disorderly conduct if: (1) the defendant engaged "in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct," (2) under circumstances that tend "to cause or provoke a disturbance."

¶20 While one could be convicted of disorderly conduct for conduct involving the use or attempted use of physical force or the threatened use of a deadly weapon, the statute does not make such conduct an element of the crime that must always be proven. A person may be convicted of disorderly conduct for all kinds of

conduct that does not involve the use or attempted physical force or threatened use of a deadly weapon——for example, profane or unreasonably loud behavior. Wis. Stat. § 947.01(1); see also State v. Douglas D., 2001 WI 47, ¶3, 243 Wis. 2d 204, 626 N.W.2d 725 (holding that written speech can satisfy the elements of disorderly conduct). In short, the crime of disorderly conduct defined in § 947.01(1) is a single indivisible crime that does not require the use or attempted use of physical force or the threatened use of a deadly weapon as an element, even if that conduct could serve as the basis for a disorderly conduct conviction. It is therefore not a misdemeanor crime of domestic violence under federal law.

¶21 Accordingly, DOJ revoked Doubek's CCW license on the basis of an erroneous interpretation of law. We therefore reverse the circuit court's decision affirming DOJ's action. See Wis. Stat. § 175.60(14m)(f)2. (directing that a court "shall reverse" if DOJ "erroneously interpreted a provision of law and a correct interpretation compels a different action").[6]

### III. CONCLUSION

¶22 DOJ improperly revoked Doubek's CCW license based on its incorrect view that Doubek was prohibited from possessing

---

[6] Doubek makes two additional arguments. First, he maintains that "violent" disorderly conduct does not necessarily involve physical force against a person. Second, he argues for reversal based on his claim that DOJ failed to file a timely answer pursuant to Wis. Stat. § 175.60(14m)(d). Because we reverse on other grounds, we do not reach these issues.

12

firearms under federal law. We reverse the circuit court's decision affirming the revocation and remand to the circuit court to provide Doubek the appropriate relief. See Wis. Stat. § 175.60(14m)(g).

*By the Court.*——The judgment and order of the circuit court is reversed and the cause remanded.

¶23 JILL J. KAROFSKY, J. *(concurring)*. Late in the evening on August 21, 1993, Doubek's estranged wife was in her home alone with their four-year-old daughter. While talking with her sister on the phone, the line suddenly went dead. Minutes later, Doubek broke through the front door, punching a hole in the glass so he could unlock it from the inside. Without his wife's permission, Doubek entered her home armed with a 2x4 slab of lumber. Raising the 2x4 above his head, he told his wife she "was dead." She asked her husband to leave and then went to the door, yelling out to her neighbors for help. Doubek threatened that if she did not move away from the door, he would "let her have it." The two eventually went outside to avoid waking their young daughter. Once outside, Doubek told his wife he did not care what would happen to him if he killed her, even if it meant he lost custody of their daughter. About 30 minutes later, Doubek left.

¶24 Based on these facts, Doubek was found guilty of disorderly conduct, a criminal misdemeanor.[1] And here, that misdemeanor qualifies as an act of domestic abuse under Wisconsin law because it involved: (1) a physical act——Doubek raising a 2x4 above his head while telling his wife she "was dead" and that he'd "let her have it"; (2) against his wife; and (3) that may have caused her to reasonably fear imminent

---

[1] Wis. Stat. § 947.01(1) ("Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.").

1

intentional infliction of physical pain or injury.[2] Yet, despite Doubek's conviction for a misdemeanor crime that constituted domestic violence, the majority opinion is correct: under federal law, his conviction is not a "misdemeanor crime of domestic violence." See 18 U.S.C. § 921(a)(33). Consequently, Doubek may continue to possess and conceal a firearm on his person.

¶25 Though legally correct, this result is as nonsensical as it is dangerous. In the realm of domestic violence, threats to kill, like the one Doubek made to his wife, more than double the risk of femicide.[3] So while threats may not constitute "violence" in the generic sense,

> an act of this nature is easy to describe as "domestic violence," when the accumulation of such acts over time can subject one intimate partner to the other's control. If a seemingly minor act like this draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a "misdemeanor crime of domestic violence."

United States v. Castleman, 572 U.S. 157, 166 (2014).

---

[2] "Domestic abuse" is defined, in part, as a "physical act" "engaged in by an adult person against his . . . spouse" that "may cause the other person reasonably to fear imminent engagement in," among other things, the "[i]nentional infliction of physical pain [or] physical injury." Wis. Stat. § 968.075(1)(a). This opinion uses "domestic abuse" and "domestic violence" interchangeably.

[3] Jacquelyn C. Campbell et al., Risk Factors for Femicide in Abusive Relationships, 93 Am. J. of Pub. Health 1089 (2003). This opinion refers to the victim as female and the perpetrator as male at times because those are the facts of this case and, at other times, because that is consistent with the research being cited. I recognize, of course, that those gender assignments do not account for all acts of domestic abuse.

¶26 And when a domestic abuse perpetrator, who has engaged in threats to kill or any other type of domestic violence, has access to a gun, the lethality risk for his victim increases significantly. The numbers are staggering. A domestic abuse victim is five times more likely to be killed by her abuser when the abuser has access to a gun.[4] Every month in this country an average of 70 women lose their lives to a domestic abuse perpetrator using a gun.[5] Over half of all male-perpetrated femicides related to domestic abuse are the result of a firearm.[6] What's more, an abuser's access to a gun increases the risk that a domestic homicide will claim the lives of multiple victims.[7] And even where no homicide occurs, a gun provides an abuser additional means to coerce, threaten, or terrorize a domestic abuse victim.[8] As the United States Supreme Court aptly summarized, "[f]irearms and domestic strife are a potentially

---

[4] Campbell, supra note 3.

[5] https://everytownresearch.org/report/guns-and-violence-against-women-americas-uniquely-lethal-intimate-partner-violence-problem/ (analyzing annual data collected by the Centers for Disease Control and Prevention's National Violent Death Reporting System through 2019).

[6] Emiko Petrosky et al., Ctrs. Disease Control & Prevention, Differences in Homicides of Adult Women and the Role of Intimate Partner Violence——United States, 2003–2014, 66 Morbidity & Mortality Wkly. Rep. 741 (2017).

[7] Aaron J. Kivisto & Megan Porter, Firearm Use Increases Risk of Multiple Victims in Domestic Homicides, 48 J. Am. Acad. Psychiatry & L. 26 (2020).

[8] Susan B. Sorenson & Rebecca A. Schut, Non-Fatal Gun Use in Intimate Partner Violence: A Systematic Review of the Literature, 19 Trauma Violence Abuse 431 (2018).

deadly combination." United States v. Hayes, 555 U.S. 415, 427 (2009).

¶27 Recognizing this deadly combination, Congress enacted a firearm ban on domestic violence misdemeanants to address a "dangerous loophole" in which domestic abusers avoided losing their access to guns because often prosecutors did not charge, much less convict, such abusers as felons——a status that generally would dispossess them. See id. at 426-427 (citing 142 Cong. Rec. 22985-86 (1996)); see also, e.g., Wis. Stat. § 941.29(1m) (criminalizing firearm possession by one "convicted of a felony," but not for one convicted of a misdemeanor).

¶28 Cases like this show the loophole is still open and dangerously so.[9] Closing it, though, requires legislative—— rather than judicial——action. Legislative action that would address conduct like Doubek's could take several forms; I outline three examples here. First, the Wisconsin legislature could enact a threatened-battery criminal statute that included

---

[9] While Wisconsin and federal law both ban gun possession by persons subject to domestic abuse restraining orders or injunctions, there are at least two reasons to believe such orders alone are insufficient to close the loophole. First, these orders are time limited. See Wis. Stat. § 813.12(3)(c) & (4)(c)-(d). Second, the percentage of abuse victims who obtain protective orders is startlingly low. See Patricia Tjaden & Nancy Thoennes, U.S. Dep't of Just., Extent, Nature, and Consequences of Intimate Partner Violence 52 (2000); Ctrs. For Disease Control & Prevention, Use of Medical Care, Police Assistance, and Restraining Orders by Women Reporting Intimate Partner Violence——Massachusetts, 1996-1997, 49 Morbidity & Mortality Wkly. Rep. 485 (2000).

4

an element of "threatened use of a deadly weapon."[10] This would be consistent with the "misdemeanor crime of domestic violence" definition in 18 U.S.C. § 921(a)(33). Second, the legislature could avoid that federal definition altogether by criminalizing "domestic abuse,"[11] making it a stand-alone crime as many states have done.[12] The legislature could then add misdemeanants convicted under the new domestic abuse criminal statute to Wis. Stat. § 941.29(1m)'s list of persons barred from possessing a gun. Third, the legislature could pass a statute authorizing a court to make a civil determination as to whether the facts underlying a conviction constitute an act of domestic violence. If a court determined those facts did constitute an act of domestic violence, then the court could disqualify an abuser from possessing a gun under a new § 941.29(1m) category. Cf.

---

[10] Generally speaking, a threatened-battery assault statute makes unlawful any threating conduct that causes the victim to fear imminent bodily harm. See, e.g., Model Penal Code § 211.1(1)(c) (Am. L. Inst. 2021) (making it a misdemeanor to "attempt[] by physical menace to put another in fear of imminent serious bodily injury"); N.J. Rev. Stat § 2c:12-1a.(3) (2021). But to trigger 18 U.S.C. § 921(a)(33), such a statute must include an explicit, divisible crime for "the threatened use of a deadly weapon." See United States v. Daniels, 316 F. Supp. 3d 949 (N.D. Tex. 2018); Frazier v. N. State Prison, Dept. of Corr., 921 A.2d 479 (N.J. App. Div. 2007).

[11] See Wis. Stat. §§ 813.12(1)(am) & 968.075(1)(a).

[12] See Thompson Reuters, Domestic Violence, 50 State Surveys: Criminal Law: Crimes (Oct. 2021) (noting that about half of the U.S. jurisdictions contain criminal statutes specifically outlawing the act of domestic violence); see also Nat'l Conf. of State Legislatures, Domestic Violence/Domestic Abuse Definitions and Relationships (Jun. 13, 2019) ("Approximately 38 states place domestic violence definitions and penalties within the criminal code . . . .").

Wis. Stat. §§ 941.29(1m)(e) & 51.20(13)(cv) (barring a person determined in a civil proceeding to be mentally ill and dangerous from possessing a firearm).[13]

¶29 The bottom line is that while the majority opinion correctly applies current federal law and reaches the conclusion it dictates, as nonsensical and dangerous as it is, the judiciary must follow that law; only the legislature may close this dangerous loophole. For these reasons, I respectfully concur.

---

[13] I raise these purely as illustrations and without any guarantees of or passing judgment on the constitutionality of any such laws. See generally State v. Roundtree, 2021 WI 1, 395 Wis. 2d 94, 952 N.W.2d 765.